## SMITH *v.* GRAY

No. 2743

November 5, 1926.                    250 P. 369.

1. JUDGMENT—RES JUDICATA.
    To make a matter "res judicata," there must be identity (1) in the thing sued for; (2) in the cause of action; (3) in persons and parties; (4) in the quality in the persons for or against whom claim is made.

2. JUDGMENT—RES JUDICATA.
    Judgment in minority stockholders' action for relief against alleged fraud of majority in extending option to purchase corporate property *held* not res judicata in action by same plaintiffs against the corporation and purchaser of its assets, not a party to the former action, wherein different relief was sought.

3. CORPORATIONS—EVIDENCE OF FRAUD AGAINST MINORITY.
    In determining whether there was fraud, oppression, and violation of trust as to minority stockholders in extending option to purchase corporate assets, facts must be considered in their entirety with reference to all surroundings.

4. CORPORATIONS—DIRECTORS AS TRUSTEES.
    Directors and managing officers of corporation are quasi trustees towards the stockholders, but not towards the corporation.

5. CORPORATIONS—EQUITY RELIEVES OPPRESSION BY MAJORITY.
    Where majority stockholders oppressively pursue course in name of corporation in violation of rights of minority, stockholder may sue in equity on behalf of himself and other stockholders.

6. CORPORATIONS—FRAUD AND CONSPIRACY.

Fraud and conspiracy between majority stockholders and another corporation, purchaser of all of corporation's assets, to transfer control by exchange of stock, and to force minority stockholders into like exchange or loss of value of their stock, *held* not established.

7. CORPORATIONS—EXCHANGE OF STOCK.

Presumption is that majority stockholders in exchanging their stock for that in another company acted on their individual judgment for their own best interests.

8. EVIDENCE—EXCHANGE OF STOCK.

Minority stockholders are presumed to have known that, if majority stockholders exchanged their stock for that in another company, it would control majority of the stock.

9. EVIDENCE—MINORITY PRESUMED TO HAVE KNOWLEDGE AFTER NOTICE.

Minority stockholders of corporation selling all its assets presumably had full knowledge of policy of purchasing corporation to exchange its stock for issued stock of selling corporation as proposed in resolutions and circular letter.

10. CORPORATIONS—CONSTRUCTIVE FRAUD NOT SHOWN.

Majority stockholders' exchange of stock for stock of another corporation purchasing all of corporation's assets, the extension of an alleged option, and alleged conspiracy, *held* not to show constructive fraud, entitling minority stockholders to equitable relief.

11. CORPORATIONS—MAJORITY BOUND TO GOOD FAITH.

Majority of stockholders are bound not to act fraudulently or in bad faith, but, where their acts are not fraudulent or ultra vires, minority cannot complain.

12. CORPORATIONS—CONTROL MAY BE ACQUIRED.

No rule of law prevents one or more persons from purchasing majority of shares of stock of corporation to acquire control of it.

13. CORPORATIONS—INTERCORPORATE FRAUD PROHIBITED.

When majority of shares of corporation are held or controlled by another corporation, its affairs must be managed without fraud in the interest of all stockholders.

14. CORPORATIONS—ARIZONA LAWS PERMIT EXCHANGE.

Arizona law does not prevent stockholders from exchanging their stock for stock in another corporation either for investment or control, and such exchange, giving other corporation control, *held* not fraudulent in law.

## C. J.–CYC. REFERENCES

CORPORATIONS—14 C. J. sec. 1292, p. 852, n. 87, 91; sec. 1444, p. 927, n. 23; p. 928, n. 29; sec. 1471, p. 947, n. 26; 14a C. J. sec. 1866, p. 98, n. 62; sec. 1879, p. 112, n. 23; sec. 2138, p. 290, n. 92.

EVIDENCE—22 C. J. sec. 46, p. 104, n. 80.

JUDGMENTS—34 C. J. sec. 1162, p. 750, n. 24; sec. 1457, p. 1027, n. 28.

APPEAL from Fourth Judicial District Court, Elko County; *J. M. McNamara*, Judge.

Suit by Henry Smith and others and all other stockholders of the Nevada Copper Mining, Milling & Power Company, a corporation, who are similarly situated, against E. F. Gray and others. From judgment for defendants and order denying motion for new trial, plaintiffs appeal. **Affirmed. Rehearing denied.**

*Wm. H. Pratt* and *E. J. L. Taber*, for Appellants:

Majority stockholders and directors hold actual, if not technical, trust relation to minority and must not defraud or oppress. If they do, equity will relieve. Jones v. Missouri-Edison Co., 144 Fed. 765; 14 C. J. 844.

Fact that majority of stock is held by another corporation does not change rule. Hyams v. Calumet & Hecla Mng. Co., 221 Fed. 529. If minority are deprived of their rights, equity will remedy. Ames v. Goldfield Merger Mines Co., 227 Fed. 292. If one corporation so dominates another as to make it mere adjunct, courts will look beyond legal fiction of distinct corporate existence as justice may require. Platte v. Bradner, 131 Wash. 573; 1 Fletcher, Corporations, 63.

Stockholder cannot be deprived of interest without his consent. Majority cannot compel him to trade his shares for shares in another corporation or accept arbitrary cash price for them. Forrester v. Mng. Co., 55 P. 229.

To set aside option agreement and replace property in hands of Nevada company would not be adequate. Appellants are entitled to individual relief. Williams v. Mng. Co., 47 Wash. 360.

Washington case is res judicata because issues were identical, parties plaintiff were same, and parties defendant were in reality same. Though Gray and Gray Company were not parties in Washington because of nonresidence there, Gray had entire control of that litigation, had same attorney as here, was then in control of both companies, and while not personally present, case was heard and largely determined on his testimony. 242 P. 367; U. S. Env. Co. v. Paper Co., 221 Fed. 79.

Issue determined by competent court cannot be again tried where proper plea is interposed between same parties or their privies. Vickers v. Vickers, 45 Nev. 274; 34 C. J. 757, 1006.

*G. A. McElroy, F. A. Bottorff,* and *McElroy & Haskell,* for Respondents:

Washington decree was interlocutory, not final, and therefore not res judicata. Whitman v. Baker, 3 Nev. 386. Final Washington decree was not entered until after trial in Nevada.

Fraud has not been shown. Equity will not interfere with internal management of corporations unless actions of majority stockholders or directorate are illegal, fraudulent or oppressive. Wheeler v. P. I. & S. Co., 32 NE. 421; 14 C. J. 877; Ellerman v. C. R. & U. S. Co., 23 Atl. 287; 7 R. C. L. 609.

Contracts between corporations whose directors are same persons are legal if in good faith. San Diego v. P. B. Co., 112 Cal. 53.

It is insufficient to allege only that unless injunctive relief be granted, irreparable injury will result. Thorne v. Sweeney, 12 Nev. 251.

Shareholder cannot stand idly by and acquiesce in proceedings, then take his choice and abide by them if favorable and repudiate them if unfavorable. 4 Pom. Eq. sec. 1725; Rabe v. Dunlap, 25 Atl. 959.

Courts must consider best interest of corporation, not personal interest of stockholder. 3 Pom. Eq. sec. 1095.

When action is representative one, and corporation alone has direct interest in subject matter and relief, stockholder cannot in one suit recover for wrong to himself and to corporation. Such joinder is improper. 3 Pom. Eq., sec. 1095; Turner v. Markham, 102 P. 272.

## OPINION

By the Court, SANDERS, J.:

This is an equitable action brought by three stockholders of the Nevada Copper Mining, Milling & Power

Company, a corporation, suing for themselves and other minority stockholders similarly situated, against respondents, praying injunctive and other equitable relief, the nature and character of which will sufficiently appear in the statement of facts. After a full hearing upon the pleadings and evidence, the trial court found in favor of respondents, and, upon its findings of fact and conclusions of law, ordered, adjudged, and decreed that plaintiffs take nothing by reason of their complaint, and that defendants have judgment against plaintiffs dissolving a temporary restraining order issued at the commencement of the action, and for their costs. The plaintiffs appeal from said judgment, and also from an order denying their motion for new trial.

The parties will be designated here as they were in the court below, and we shall refer to the corporation defendants as the Nevada Company and the Gray Company. The pleadings are too lengthy to attempt a detailed statement of their various allegations, and we find it difficult to make a condensed statement of the facts; but the case is one that cannot be thoroughly understood without a full knowledge of all the conditions and causes which led to the acts of which complaint is made.

It is a long story. Prior to, or during, the year 1905, Henry Smith, plaintiff, grubstaked one Jeffrey McDermott to search and prospect for mineral on the public domain. McDermott located a number of copper bearing lode prospects in the Salmon river mining district in Elko County, Nevada, far in the interior, and 40 miles from any railroad. The locations were considered to be of such promise that in 1905 the plaintiff, Henry Smith, promoted and organized the Nevada Company under the laws of the State of Arizona, with an authorized capital stock of 1,500,000 shares, of the par value of $1 each, for the purpose of taking over and financing the development thereof through sale of treasury stock of the corporation. Upon its organization all said locations were conveyed to the corporation for a stock consideration. Smith and McDermott continued in control of the

majority of the stock of the corporation up to the year 1907, when McDermott sold and transferred his stock to one E. F. Messinger, an incorporator, and one of the directors of the corporation. Smith and Messinger continued in control of the majority of the issued stock up to the year 1918. A large amount of stock was sold to the public, and its proceeds were devoted to the exploration and development of the property. A large amount of low-grade ore was exposed by the development work carried on under the management of Henry Smith, which, in the judgment of the interested parties, justified the further development of the mining ground. The company, however, was unsuccessful in selling enough of its treasury stock to raise sufficient funds to prove the value of the ore bodies at depth. It was a stupendous undertaking in an unproven mining district, attended with the usual risk and hazard of mining investments, and it required extraordinary effort and a large amount of capital to prove the value of the property and to secure transportation facilities. While all the officers and stockholders apparently believed in the merit of the property, it was deemed for the best interest of the company to discontinue the sale of stock for development purposes, and instead to make a sale, or interest in the property some person or persons, company or corporation with sufficient capital to develop it, secure transportation, and, if possible, put the property upon a paying basis without further expense to the stockholders. The property consisted of forty-nine patented and two unpatented mining locations, mine machinery, tools, and mine equipment.

In August, 1918, E. F. Messinger arranged a meeting between Henry Smith and one E. F. Gray. The said Gray was a successful promoter of several dividend paying copper mines, one of which was the Nevada Consolidated, at Ely, Nevada. Gray made an examination and considered the property to be of such merit as to warrant further development, and as a result he entered into negotiations with the officers of the company. A special meeting of the board of directors of

the company was held on the 11th day of September, 1918, at Tacoma, Wash. The members of the board at that time consisted of E. F. Messinger, Henry Smith, G. H. Reed, A. E. Irving, and E. S. Price. At this meeting the following resolution was passed and adopted:

"* * * Upon motion duly seconded and carried the president and secretary were authorized and instructed to enter into a written lease and bond binding the company to sell its entire holdings in the Salmon river mining district, Elko County, Nevada, to Mr. E. F. Gray, of Seattle, Wash., for $250,000, to be paid as follows: $25,000 of the purchase price to be expended in development work and improvements on the ground within one year from date of signing of the lease and bond; $25,000 cash to be paid on or before the expiration of the second year from the signing of the bond; and $200,000 or the full purchase price, to be paid in cash on or before the expiration of three years from the signing of the lease and bond; said E. F. Gray to have the right to make full payment at any time during the life of the lease and bond; 25 per cent royalty to be paid to the Nevada Copper Mining, Milling & Power Company on all ores shipped during the life of the bond, same to apply on the purchase price. Said lease and bond to contain a clause which provides that said E. F. Gray agrees that on or before one year from date of signing the lease and bond he agrees to give an option on 2,500 shares of stock in a holding company, which he proposes to organize on the following terms: At a price based on pro rata ratio on bonded price of the property herein bonded to unit value of stock in the holding company at $100 per share. Said stock, or any part thereof, to be applied in settlement in lieu of cash to shareholders of the Nevada Copper Mining, Milling & Power Company who may desire same. * * * "

Pursuant to this resolution, the president and secretary, under the seal of the Nevada Company, granted to E. F. Gray, in consideration of $1, and of the terms and conditions of the agreement, the right, privilege, and option to purchase all the property of the Nevada

Company described therein for the price of $250,000, payable as provided in the above resolution.

Pursuant to the resolution, E. F. Gray promoted and organized the Gray Mining Company, a corporation, under the laws of the State of Delaware, with 100,000 shares of capital stock, of no par value. Upon its organization, E. F. Gray assigned to the Gray Company said option agreement, which assignment was approved by the Nevada Company. The Gray Company took possession of the property covered by the option, and proceeded to carry out a plan and policy for its development upon a large and expensive scale. During the first year of the option it expended in excess of the $25,000 required by the option agreement in development work on the property. It extended a tunnel into the property for a distance of 2,500 feet, which exposed 4,000,000 tons of commercial ore. The successful development of the property attracted a large number of people to the mining district. An independent townsite company was organized, and as a result the town of Contact came into existence.

At this stage of development the Gray Company took up the question of transportation. An independent company was formed to build a railroad between Rogerson, Idaho, and Wells, Nevada, which would pass through the town of Contact. It was represented that the building company would have sufficient funds to construct said road, provided certain amounts could be secured from the States of Idaho and Nevada. A certificate was granted by the Interstate Commerce Commission to construct the road, but the parties were unable to finance the enterprise. Thereafter certain committees from Idaho and Nevada, of one of which the defendant E. F. Gray was a member, succeeded in having the Union Pacific Railway Company build and equip a railroad between said points.

During the running of the option, the Nevada Company, on August 19, 1920, upon request of the Gray Company, extended the period of the option to September 23, 1922. On August 9, 1921, the option was

again extended to September 23, 1923. On August 25, 1922, upon request of the Gray Company, the option was extended to September 23, 1924. The several resolutions extending the time of the option show that, because of the adverse business conditions, it was difficult for the Gray Company to finance the development work being carried on by it, and that it was deemed for the best interests of the Nevada Company to grant said extensions. On these dates E. F. Messinger, E. F. Gray, Myra K. Price, E. S. Price, and G. H. Reed composed the board of directors of the Nevada Company.

On September 1, 1922, the Gray Company, in accordance with the resolution of September 11, 1918, issued a circular letter to the stockholders of the Nevada Company, as follows:

"You are hereby notified that you have been granted the privilege of exchanging your stock for stock of this company in the proportion of 505.05 shares of the Nevada Company stock valued at 19.8 cents per share, for one share of the stock of this company valued at $100 per share.

"This privilege must be exercised by you on or before the 31st day of July, 1923."

The proof shows that 37 out of 48 stockholders of the Nevada Company exchanged their stock for stock in the Gray Company, upon the basis of said proposal for exchange of stock contained in the resolution of the board of directors of the Nevada Company and the above circular letter. E. F. Gray became a director in the Nevada Company, with one share of stock; the other directors being E. F. Messinger, G. H. Reed, E. S. Price, and Myra K. Price. The stock of the Nevada Company was held as follows:

| | |
|---|---:|
| Defendant Gray Mining Company approximately | 936,337 shares |
| Defendant E. F. Gray | 1 share |
| Plaintiff Henry Smith | 291,742 shares |
| Plaintiff Canalise Smith | 947 shares |
| Plaintiff H. M. Grinnell | 3,334 shares |
| E. F. Messinger | 1 share |
| G. H. Reed | 1 share |
| Various other stockholders | 29,406 shares |

The present directors of the Nevada Company are E. F. Messinger, G. H. Reed, E. F. Gray, Laird Wilcox, and Oscar Anderson. The present directors of the Gray Company are E. F. Gray, E. L. R. Wallace, Franklin E. Clark, E. F. Messinger, Joseph B. Cotton, and Laird Wilcox.

The evidence tends to show that the expenditure of $240,000 by the Gray Company and the securing of a railroad, the property of the Nevada Company was at the time of the commencement of this action of the reasonable value of $1,500,000.

The bill of complaint herein was filed on August 19, 1924. The option agreement referred to is made a part of the complaint by proper reference, and is made an exhibit. The complaint alleges, in substance, that upon the execution of the option agreement the officers of the Nevada Company exchanged practically all of their stock for stock in the Gray Company, and transferred one share of stock of the company to the defendant E. F. Gray; that the Gray Company at the present time holds 909,329 shares of the stock of the Nevada Company, and its officers and trustees do and perform such acts and things as are demanded and required of them by the officers and trustees of the Gray Company; that upon the refusal of plaintiffs to transfer their stock the defendants brought pressure to bear upon them to extend the time limit of the option agreement, to their irreparable damage and injury. It is alleged that a fair basis of exchange would be not to exceed 63 shares of Nevada Copper Mining, Milling & Power Company stock for one share of Gray Mining Company stock. It is further alleged that E. F. Gray, E. F. Messinger, G. H. Reed, E. S. Price, Myra K. Price, and the defendant Gray Company entered into a conspiracy for the purpose of defrauding the plaintiffs and other minority stockholders of the Nevada Company, and for the purpose of forcing them to exchange their stock on the basis above set out, or freezing them out entirely, and making their stock entirely worthless, and that, unless restrained, defendants would continue to extend said

option and to prevent plaintiffs and other minority stockholders from realizing any amount upon their stock, and to make the same entirely worthless.

The prayer of the complaint is to the effect, first, that a permanent injunction be issued restraining defendants from taking any action whatsoever to extend the option agreement, and for a mandatory injunction requiring E. F. Gray and the Gray Company to· either pay the balance of $225,000 due on said option or forfeit all rights in the property covered thereby; secondly, that the court enter its decree enforcing said option and finding that the Gray Company shall pay plaintiffs and such other of the stockholders of the Nevada Company as may join in this suit their proportionate share of said $225,000 represented by their shares of stock in the Nevada Company, and, upon failure so to do, that plaintiffs be adjudged to be undivided owners of the property covered by said option in the proportionate amount which their stock in the Nevada Company bears to the whole amount of the stock of said company.

The answer of the defendants practically admits all the material facts, but specifically denies the conclusions drawn therefrom with reference to the allegations of fraud, conspiracy, and oppression, and for defense recites the facts and circumstances herein detailed, and prays that the defendants take nothing by their complaint. The plaintiffs for reply set up by way of estoppel or res judicata against all the claims and allegations contained in the answer the judgment roll in an action commenced in August, 1924, in the superior court of Pierce County, State of Washington, wherein these plaintiffs were plaintiffs and E. F. Messinger and G. H. Reed, as directors and trustees of the Nevada Company, and the Tacoma Savings Bank & Trust Company were defendants. It is claimed in the reply that, by reason of the findings and decree of the Washington court in favor of plaintiffs, these defendants are estopped from denying the facts alleged in the complaint which were adjudicated against defendants in the Washington case.

The record discloses that upon the trial of this action the attorneys for the respective parties stipulated that at the time of the commencement of this action there was no valid extension of the option agreement, and there was no valid and binding option in existence. Other facts will be commented upon in the course of this opinion.

The legal questions involved on this appeal may be classified under two headings: (1) Questions relating to fraud, conspiracy, and violations of trust and confidence; (2) questions relating to estoppel or res judicata.

If the contentions of plaintiffs relative to res judicata are sustained, they dispose of this case. We shall therefore consider them first.

The decree and findings of the superior court of Pierce County, State of Washington, were affirmed by the supreme court of that state in the case of Smith v. Nevada Copper Mining, Milling & Power Co., 137 Wash. 317, 242 P. 367. We note that the supreme court in the course of its opinion states:

"Upon the hearing of the case, on issues completed, no judgment was given against the Gray Mining Company, manifestly for the reason that it was not a party to the action and was at all times a foreign corporation doing no business in this state."

1, 2. We are in accord with the holding of the trial court that to make a matter res judicata there must be a concurrence of four conditions, namely: (1) Identity in the thing sued for; (2) identity of the cause of action; (3) identity of persons and of parties to the action; (4) identity of the quality in the persons for or against whom the claim is made. 34 Cyc. 1666, and cases cited under note 56. Undoubtedly plaintiffs' plea of estoppel or res judicata lacks two of the required conditions: (1) Identity of parties to the action, and (2) identity in the thing sued for. Therefore the contention that the defendants by reason of the decree in the Washington case are estopped from taking issue

with the allegations of the complaint herein is untenable.

3. Coming to the question relating to fraud, oppression, and violations of trust and confidence, the material facts are undisputed. The only dispute between the parties being the inferences drawn therefrom. The facts speak for themselves. They must be taken in their entirety, and weighed with and considered with reference to all the conditions and surroundings of the Nevada Company to determine whether the defendants have so acted as to deprive plaintiffs of their valuable property rights, or to entitle them to the relief demanded.

4. The principles of law applicable to the undisputed facts are so well defined that it would be a matter of supererogation to incumber this opinion with a review of them. The directors and managing officers of a corporation, says Pomeroy, occupy the position of quasi trustees towards the stockholders alone, and not at all towards the corporation with respect to the shares of stock. Since the stockholders own these shares, and since the value thereof and all their rights connected therewith are affected by the conduct of the directors, a trust relation plainly exists between the stockholders and the directors, which is concerned with, and confined to, the shares of stock held by the stockholders. 3 Pomeroy Eq. Jur. (4th ed.) sec. 1090.

5, 6. The directors and managing officers of the Nevada Company are charged by the bill of complaint with having entered into a conspiracy with E. F. Gray and the Gray Company for the purpose of defrauding plaintiffs and other minority stockholders, and for the purpose of forcing them to accept Gray Company's stock for their stock in the Nevada Company upon an unfair basis, or freezing them out entirely and making their stock in the Nevada Company utterly worthless. We are of opinion that plaintiffs utterly fail to establish these allegations in their complaint, which furnish the grounds for a court of equity to interfere in their behalf. Undoubtedly it is the law that, where the majority stockholders are oppressively and illegally pursuing a course, in the name of the corporation, which is in violation

of the rights of the minority, and which can only be restrained by the aid of a court of equity, a stockholder may sue in equity on behalf of himself and other stockholders who may come in for appropriate relief. Private Corporations (Clark & Marshall), sec. 536, p. 1661. It is a significant fact in this case that none of the stockholders of the Nevada Company are here complaining of the transactions carried on between the defendant corporations except plaintiffs. The question to be decided is whether the facts presented by the record are of such a character as to bring this case within the application of the principles of equity hereinabove declared.

It will be observed that no point is made that the giving to E. F. Gray of an option to purchase the property of the Gray Company, and obligating him to organize a holding company, and give to its stockholders the right, privilege, or option to exchange their stock for stock in the company to be organized upon the basis specified in the circular letter of the Gray Company, was an ultra vires act.

7. Taking into consideration, as we must, the condition of the Nevada Company when the transactions complained of were being carried on, we are satisfied that the directors of the Nevada Company evidently honestly believed that they at all times were acting for the best interest of the stockholders of the Nevada Company and within their powers. There was an evident belief among the directors and stockholders of that company that with development the property, then in prospect stage, would prove to be of great value. In this they were not disappointed. The proof tends to show that, by reason of the expenditure by the Gray Company of approximately $240,000 in development and the securing of transportation, the property at the time of the commencement of this action was reasonably worth $1,500,000. The acts with reference to the exchange of stock were not the acts of the corporation, but of the shareholders individually. It is hard to understand in what respect the plaintiffs were oppressed or injured by

the act of the majority of the stockholders of the Nevada Company in exchanging their stock for stock in the Gray Company. The proceedings were certainly open and free from actual fraud, and the presumption is that the stockholders acted upon their individual judgment, and for their own best interests. There was no fraud; no conspiracy. It was the open and avowed purpose of the directors of the Nevada Company and its stockholders to enlist the Gray Company in financing the development of the property of the Nevada Company and placing it upon a paying basis. The proof tends to show that, upon the splendid showing made by the expenditure by the Gray Company of $240,000 on the property, a majority of the stockholders deemed it for their best interests to exchange their stock in lieu of their proportionate share of the purchase price fixed in the option agreement, as they had the unquestioned right to do.

8, 9. In this connection the proof shows that the plaintiff Henry Smith, upon the organization of the Gray Company, became a director, and that he participated in the adoption of the resolution requiring E. F. Gray to form a holding company, and to give the stockholders of the Nevada Company the privilege or option to exchange their stock if they so desired. It appears that in two letters of Henry Smith in evidence he expressed himself as being desirous of releasing his stock in the Nevada Company, then held in pledge by a third party, so as to enable him to exchange his stock for stock in the Gray Company, which he stated he was anxious to do. The plaintiffs are presumed to have known that, if a majority of the shareholders exchanged their stock, it would of necessity result in giving to the Gray Company the control of the majority of the stock of the Nevada Company. The plaintiffs presumably had full knowledge of the plan and policy of the Gray Company to effect the exchange of stock as proposed in the resolutions of the Nevada Company and the circular letter of the Gray Company, if the property proved on development to be of sufficient value to induce the stockholders

to make the exchange. In this situation it is difficult to understand upon what principle of equity jurisprudence the plaintiffs can question the validity of the acts and conduct of the directors and stockholders of either corporation.

In fairness to Mr. Smith, it is proper to state that as a witness in his own behalf he testified upon the trial that he at no time assented to the resolutions extending the time of the option agreement, except upon the condition that the Gray Company would be required to fix a definite time limit for the payment of the purchase price of the property as fixed in the option agreement. The trial court found against the testimony of Mr. Smith in this regard upon conflicting evidence, and, in effect, found that he had acquiesced in the several resolutions extending the time of the option agreement and was bound thereby. There was certainly no evidence to justify a finding that by reason of said extension the directors and the majority of the stockholders of the Nevada Company, in exchanging their stock in the Gray Company, committed a fraud upon, or oppression on, the minority stockholders of the company by extending the time limit of the option agreement. Furthermore, there is no necessity to enter upon a discussion of the acts of the company extending the time limit of the option when it affirmatively appears that the attorneys for the respective parties stipulated that at the commencement of this action there was no valid or binding option in existence.

10-14. The debatable question is whether the facts show any such constructive fraud upon the part of the defendants as would require a court of equity to interfere and to declare the transactions complained of to be fraudulent in law. The plaintiffs take the position that, upon their refusal to exchange their stock in the Nevada Company for stock in the Gray Company, they were entitled to a mandatory order compelling the defendant Gray and the Gray Company to pay them in cash their proportionate share of the amount due under the option agreement of $225,000, as represented by the ratio which

their shares bore to the whole number of shares of the Nevada Company. We do not think the facts and circumstances presented by this record justify or call for such relief. The only averments in the bill of complaint which give plaintiffs any standing in a court of equity as minority stockholders are the allegations in reference to an alleged conspiracy on the part of the directors and managing officers of the Nevada Company to oppress plaintiffs and other minority stockholders into exchanging their stock for stock in the Gray Company. As above stated, there was nothing in the evidence to justify such a finding. It may be conceded that the majority stockholders are bound not to act fraudulently or in bad faith, but, where the acts of the majority are neither fraudulent nor ultra vires, the minority or dissenting stockholders have no ground of complaint. There is no rule of law which prevents one or more persons from purchasing a majority of the shares of a corporation for the purpose of acquiring control thereof. It is true that when the majority of shares of a corporation are held or controlled by another corporation its affairs must be managed without fraud in the interest of all the stockholders and not for the aggrandizement of the majority stockholders. 14 C. J. sec. 1292, p. 850. We find nothing in the law of Arizona, under which the Nevada Company was created, that prevents stockholders from exchanging their stock for stock in another corporation, either for investment or control. It appears that the plaintiffs, with full knowledge of all the facts, permitted the Gray Company to acquire the control of the outstanding stock of the Nevada Company without objection. And the evidence tends to show that the plaintiffs, particularly the plaintiff Smith, participated in the movement of the Gray Company to bring about an exchange of stock as outlined in the resolution of the Nevada Company of September 11, 1918, and the circular letter of the Gray Company. There is running through the complaint in this case an attempted assertion of a cause of action against the defendants, not

for the use and benefit of the Nevada Company, but exclusively affecting the complainants as individuals. Such a cause of action is a personal one, and, but for the allegations of the complaint with reference to fraud and oppression, the plaintiffs would have no standing whatever in a court of equity as minority stockholders.

Plaintiffs have utterly failed to show any betrayal of trust or confidence on the part of the defendants, and we think, after a review of the evidence, that the findings of the trial court are amply sustained, and no other findings would have been possible in view of the undisputed facts which appeared upon the trial. It is asserted, however, that through the predominant influence of E. F. Gray as the owner of the majority of the stock of the Gray Company, the majority of the stockholders in the Nevada Company were induced to make the exchange of stock solely for the use and benefit of the Gray Company, and to enable it to acquire an interest therein without the payment of any consideration to the detriment and injury of the stockholders of the Nevada Company. We are impressed from the evidence that it was the success of the Gray Company in making a mine out of the property of the Nevada Company that induced a large majority of its stockholders to exchange their stock for stock in the Gray Company. There is certainly no evidence to justify a finding that E. F. Gray or the Gray Company has done any act by which the property or business of the Nevada Company has been interfered with or injured, or that, by reason of the control by the Gray Company of the majority of the stock of the Nevada Company, the intermingling directors of the two companies were, at the commencement of this action, oppressively and illegally pursuing a course in violation of the rights of plaintiffs and other minority stockholders of the Nevada Company. There is no proof to show a continuing intention on the part of the Gray Company to absorb or destroy the interests of the minority stockholders of the Nevada Company, or to affect the integrity

of the corporation, or to interfere with its internal management, to the detriment and injury of the corporation or its stockholders.

We find no occasion to disturb the findings of the lower court, and its judgment should be affirmed.

It is so ordered.

## ON PETITION FOR REHEARING

March 2, 1927.

*Per Curiam:*

Rehearing denied.