Martin HORWITZ, Plaintiff,

v.

SOUTHWEST FOREST INDUSTRIES,
INC., and William A. Franke,
Defendants.

No. CV–R–84–467–ECR.

United States District Court,
D. Nevada.

March 20, 1985.

John Frankovich, Reno, Nev., and Allan R. Tessler, Sheldon D. Camhy, Kurt Hunciker and John G. Nicolich, New York City, for plaintiff.

Albert F. Pagni, Reno, Nev., and Charles F. Richards, Jr., Donald A. Bussard, Jesse A. Finkelstein, Gregory P. Williams, Gregory V. Vallallo, C. Stephen Bigler, Allen M. Terrell, Jr., Wilington, Del., for Southwest Forest Industries, Inc.

Peter D. Laxalt and Richard L. Davenport, Reno, Nev., for Franke.

## MEMORANDUM DECISION AND ORDER

EDWARD C. REED, Jr., District Judge.

The plaintiff has moved for a preliminary injunction enjoining the defendants from taking any action in furtherance of certain stock purchase rights declared by the defendants, as a dividend to the common stockholders of Southwest Forest Industries (SFI or the Company), on October 22, 1984. SFI has opposed the motion. (Defendant Franke, who has pending a motion to dismiss or transfer for lack of personal jurisdiction, has not responded). Memoranda of points and authorities, affidavits and exhibits have been filed by both the plaintiff and SFI.

The gist of the plaintiff's contentions is as follows: About a year ago, SFI's Board of Directors approved an agreement in principle whereunder an insider group headed by the Company's president, defendant Franke, would take SFI private by buying all of its outstanding stock from the stockholders for $24 per share. The plan failed for lack of capital. However, an outside group then indicated willingness to buy all the stock at the same price. After some brief negotiations, the Board terminated consideration of the matter. It then announced the issuance of "poison pill" warrants. The effect of special features of the warrants is to make a tender offer for the Company's stock virtually impossible. This procedure was adopted for the purpose of thwarting any competitive offers by outsiders to obtain control of SFI. The stockholders have been told that the warrants were designed to enable present Management to pre-screen and veto tender offers that it deems unfair or inadequate. However, deciding whether to accept a tender offer or to vote in favor of a proposed merger are rights of stockholders that are usurped by the warrant provisions. The dominant motives of Management are self-perpetuation in office and the continued enjoyment of Management perquisites.

The warrants also authorize Management to veto the acquisition by any person of a 20% interest in SFI's stock. This, in effect, will preclude mergers that are authorized by statutes of Nevada, the state of SFI's incorporation. Since a 20% interest may not be acquired by anyone without Management's acquiescence, any meaningful challenge to the Company's present control group is prevented. The result is impairment of the rights of stockholders to buy as much of the Company's stock as they wish and to sell their shares to anyone at the highest price in a free market. The plaintiff is an SFI stockholder. The Hearst Corporation is the owner of the largest bloc of Company stock, namely 17.5% of the stock outstanding. It has three representatives on SFI's Board of Directors. Certain officers and directors, including defendant Franke, own in the aggregate another 3.1% of the stock. The Board of Directors has authorized the Company to enter into "golden parachute" agreements with certain of its officers, thus providing them with windfall benefits if a change in control of the Company should result in a termination of their employment. The poison pill warrants are tied to the outstanding shares of Company stock, one warrant for each share. The warrants, when exercisable, entitle their holders to purchase the Company's common stock at a $50 per share price. At the time the Company announced its dividend of warrants, SFI's stock was trading at approximately $17 per share. The warrant rights are not exercisable until after public announcement that a person or group owns 20% of the Company's stock or the commencement of a tender offer for 30% or more of the stock. Until such time, the Company may recall or redeem the warrants for the nominal price of 25¢ each. In the case of a merger, each warrant entitles its holder to receive stock of the surviving company having a market value of $100 in return for the payment of $50. Alternatively, the acquiring company is permitted to buy the warrants at an exorbitant cash premium. In either event, the cost would be so high as to make any

merger unfeasible. An injunction is needed because acquisition of a 20% interest by one person or group or the making of a tender offer for 30% or more of the Company's stock would set off a "spring-gun," making the warrants effective. The result would be the stifling of tender offers, the depression in value of the stock, and impairment of the stockholders' rights to buy stock, to sell stock and to seek a controlling voice in SFI.

SFI's papers filed in opposition to the plaintiff's motion for a preliminary injunction present its side of the story as follows: The purpose of the issuance of the warrants is to protect the Company's shareholders from unfair two-tier tender offers. Under such an offer, the acquiror makes a cash offer for a controlling position. After gaining control, the acquiror then offers a lesser consideration (often including securities rather than all cash) for the remaining stock. Alternatively, the remaining stockholders may be ignored by the acquiror, who already possesses a controlling interest. A front-end loaded, two-tier tender offer thus is coercive and unfair to the shareholders. Even if the initial cash offer is inadequate, a shareholder is under pressure to tender his stock because of the realization that he figures to receive even less in the second tier of the transaction. As to the agreement in principle for acquisition of SFI by a group of investors which included members of the Company's Management, the deal fell apart when certain banks that had agreed to finance the transaction withdrew from participation because of rising interest rates and other factors. The outside group, which in May 1984 indicated it was interested in acquiring control at the same per share price offered by the Management group, failed to make a formal offer and would not or could not demonstrate the availability of adequate financing. Therefore, in July 1984 the Company's Board of Directors directed Management to terminate negotiations. Following these two unsuccessful acquisition episodes, the Board instructed Management to concentrate on business operations. Effort then was devoted to an already-commenced five-year plan to develop and expand the Company. The plan was submitted for review to The First Boston Corporation, an investment banking firm that had been serving for several years as a financial adviser to SFI. In connection with the Company's expressed concern over its vulnerability to any coercive takeover attempt, First Boston worked with outside legal counsel and Management in developing the rights or warrant plan with which the plaintiff takes umbrage. A three-hour discussion of said plan took place at a Board meeting on October 22, 1984. First Boston, outside counsel and the Company's Nevada counsel explained the plan and its pros and cons. Its utility in protecting SFI and its stockholders from unfair or coercive takeovers while the five-year plan was being implemented was an important factor. If expectations are met, the Company stock will have a market value of $50 per share by the end of the five years; hence, the use of that price in the warrants. The warrant plan serves to encourage a potential acquiror to negotiate with the Board, in light of the Board's right to redeem the warrants for a mere 25¢ each. The Board thus would serve as the bargaining agent for all the shareholders, who individually have little negotiating leverage. The Board's negotiations would be exercised in the light of its fiduciary duties. The fact that other major corporations had adopted similar plans was made known to the Board. The Company's Nevada attorneys advised the Board that research indicated that the warrant plan appeared legal under Nevada law. The plan was adopted unanimously by the directors in the exercise of their business judgment. Eleven of the twelve directors are non-Management. The rights were issued November 1, 1984.

The Complaint was filed herein on November 8, 1984.

*Discussion*

■ An injunction may issue only after the plaintiff has established that the conduct sought to be enjoined is illegal and the defendants, if not enjoined, will engage in such conduct. *United Transportation*

*Union v. State Bar of Michigan*, 401 U.S. 576, 584, 91 S.Ct. 1076, 1081, 28 L.Ed.2d 339 (1971); *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 8, 98 S.Ct. 1554, 1559, 56 L.Ed.2d 30 (1978). Therefore the conduct of SFI's Board of Directors must be the focus of attention here.

■ The powers of corporate directors is determined by state law. *Burks v. Lasker*, 441 U.S. 471, 478, 99 S.Ct. 1831, 1837, 60 L.Ed.2d 404 (1979). It is the law of the state of incorporation that is controlling. *Lewis v. Anderson*, 615 F.2d 778, 781 (9th Cir.1979). SFI is incorporated in Nevada. To the extent that any issues raised have not yet been confronted by the Nevada Supreme Court, this federal court must predict how the State Supreme Court would decide them. *Amfac Mortgage Corp. v. Arizona Mall of Tempe, Inc.*, 583 F.2d 426, 434–5 (9th Cir.1978). Guidance may be sought from other jurisdictions that have considered those issues. *Matter of Charles D. Stapp of Nevada, Inc.*, 641 F.2d 737, 738 (9th Cir.1981).

■ A director is a fiduciary. *Foster v. Arata*, 74 Nev. 143, 325 P.2d 759, 765 (1958). Since the value of and rights incident to outstanding shares of stock are affected by the conduct of directors, a fiduciary relationship exists in favor of the shareholders as to their shares of stock. *Smith v. Gray*, 50 Nev. 56, 250 P. 369, 373 (1926); *cf. Treadway Companies, Inc. v. Care Corp.*, 638 F.2d 357, 375 (2nd Cir. 1980). The director's obligation consists of the duty of care and the duty of loyalty. *Norline Corp. v. Rooney, Pace Inc.*, 744 F.2d 255, 264 (2nd Cir.1984). The duty of care requires the director to exercise the care that a reasonably prudent person in a similar position would use under similar circumstances. *Id.* The duty of loyalty requires the director to act in good faith and, where he is shown to have a self-interest in a transaction, the burden shifts to him to demonstrate that the transaction is fair and serves the best interests of the corporation and its shareholders. *Id.*

■ Nevada statute, NRS 78.120(1) provides that, with certain limitations not pertinent here, the board of directors shall have full control over the affairs of the corporation. Traditionally, the board's managerial function includes making the decision whether to welcome or oppose a proposed merger or takeover. *Jewel Companies v. Pay Less Drug Stores Northwest*, 741 F.2d 1555, 1560 (9th Cir.1984); *Panter v. Marshall Field & Co.*, 646 F.2d 271, 288 (7th Cir.1981). Further, the board possesses discretion to negotiate the terms of a proposed merger agreement, although the ultimate decision whether to accept or reject it rests with the stockholders. *Jewel Companies* at 1562; *Conoco Inc. v. Seagram Co., Ltd.*, 517 F.Supp. 1299, 1303 (S.D.N.Y.1981), *aff'd w/o op.* 661 F.2d 907 (2nd Cir.1981). Even after a proposed agreement has been negotiated by the board, its fiduciary obligation to its shareholders requires the providing to them of information regarding competing offers. *Jewel Companies* at 1564.

■ Where a director is charged with breach of his fiduciary obligation, the "business judgment" rule is utilized. That rule bars judicial inquiry into actions of corporate directors taken in good faith and in the exercise of honest judgment in lawful furtherance of corporate purposes. *Norlin Corp. v. Rooney, Pace Inc.*, 744 F.2d at 264. It serves as a defense for the board members where: (1) they acted in a good faith belief that their conduct was in the corporation's best interests; (2) they exercised due care in ascertaining the relevant facts and law before acting; and (3) they didn't act in self-interest. *Whittaker Corp. v. Edgar*, 535 F.Supp. 933, 950 (N.D. Ill.1982). The affidavits and exhibits submitted by the Company in opposition to the instant motion for a preliminary injunction reflect the expenditure of considerable effort to obtain full knowledge of the facts and law. The rights plan was formulated in the light of the five-year plan for development and expansion of the Company. Advice was obtained both from investment bankers and law firms. Directors have a right to rely on such advice, even if it turns

out to be erroneous. *Id.* at 951; *Panter v. Marshall Field & Co.,* 646 F.2d at 297. A desire to maintain control of the corporation does not indicate that the directors acted in self-interest, unless that motive is the sole or predominant reason for their conduct. *Id.* at 294; *Whittaker Corp.* at 950.

■ There is a presumption that the acts of corporation directors are honest and in the best interests of the company. *Foster v. Arata,* 74 Nev. 143, 325 P.2d 759, 764 (1958). The business judgment rule postulates that if directors' actions can arguably be taken to have been done for the benefit of the corporation, then the directors are presumed to have been exercising their sound business judgment rather than to have been responding to self-interest motivation. *Panter* at 294; *Whittaker Corp.* at 950. The burden of showing bad faith or abuse of discretion rests upon the plaintiff. *Id.; Treadway Companies, Inc. v. Care Corp.,* 638 F.2d 357, 381 (2nd Cir. 1980).

■ The business judgment rule affords directors wide latitude in devising strategies to resist unfriendly advances. *Norlin Corp.* at 744 F.2d 264. Defensive tactics themselves are illegitimate only if their primary purpose is the entrenchment of present management. *Warner Communications, Inc. v. Murdoch,* 581 F.Supp. 1482, 1491 (D.Del.1984). The decision to build the value of a company from within, rather than through merger or takeover may be a rational exercise of business judgment. *Panter* at 296. Therefore, directors' actions in averting takeovers will be upheld if reasonable and taken in good faith. *Jewel Companies v. Pay Less Drug Stores Northwest,* 741 F.2d 1555, 1560–1 (9th Cir.1984). It is not the consensus of the courts and commentators that the promotion of active competition among would-be acquirors of a corporation is the sole aim of corporate law. *Id.* at 1568–9.

■ The plaintiff contends that the defendants have made misstatements in connection with the adoption of the Company's rights plan and the issuance of the poison pill warrants. However, it does appear that any injuries to him have resulted from the acts of misconduct, rather than the misstatements. If the evidence eventually should show this to be the case, relief would not lie under federal securities laws. *Warner Communications* at 1495; *Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 479, 97 S.Ct. 1292, 1304, 51 L.Ed.2d 480 (1977).

■ The function of a preliminary injunction is to preserve the status quo *ante litem.* *Regents of University of California v. ABC, Inc.,* 747 F.2d 511, 514 (9th Cir.1984). The status quo is the last uncontroverted status that preceded the pending controversy. *Id.; Tanner Motor Livery, Ltd. v. Avis, Inc.,* 316 F.2d 804, 809 (9th Cir.1963). In the instant case, the status quo would be the situation before the adoption of the rights plan and the issuance of the warrants.

■ The Ninth Circuit has formulated several descriptions of the correct standard for determining whether a preliminary injunction should issue. *Regents of University of California* at 515. Nevertheless, they all fit within a single continuum. *Id.* The essential task in each case is to balance the equities, that is, to determine the relative hardship to the parties. *Sierra On-Line, Inc. v. Phoenix Software, Inc.,* 739 F.2d 1415, 1421 (9th Cir.1984). If denial of an injunction will be decidedly hard on the plaintiff, he need not show as robust a likelihood of success on the merits. *Id.*

■ SFI's rights have been accepted for trading on the New York Stock Exchange, and their existence has been noted on recently issued stock certificates of the Company. A return to the status quo would entail the undoing of these acts, with resulting confusion to the investing public. Against this must be weighed the plaintiff's allegations that even an inadvertent act could "spring-gun" the warrants into effect, thereby stifling tender offers, depressing the value of the stock, and impairing shareholders' rights to buy and sell

their stock and to seek control of the Company.

 Public interest is a factor to be considered in balancing the hardships. *Students of California School for the Blind v. Honig,* 736 F.2d 538, 542 (9th Cir.1984), *app. pdg.; Lopez v. Heckler,* 725 F.2d 1489, 1498 (9th Cir.1984), *app. pdg.* The issuance of a preliminary injunction here necessarily would result in serious confusion among Company's Management, the investing public and financial institutions. On the other hand, the hardship that refusal of injunctive relief would impose on the plaintiff is somewhat speculative. If SFI's Board of Directors carries out its fiduciary obligations, as it is presumed it will, the leverage it has to represent all the stockholders in negotiating a merger or takeover agreement could well redound to the plaintiff's benefit. The Ninth Circuit has noted, in the context of a case involving the maintenance of a derivative action:

> "To allow one shareholder to incapacitate an entire board of directors merely by leveling charges against them gives too much leverage to dissident shareholders. There is no reason to believe that a minority shareholder is more likely to act in the best interest of the corporation than are directors who are elected by a majority of the stockholders."

*Lewis v. Anderson,* 615 F.2d 778, 783 (9th Cir.1979).

The only test that the plaintiff herein might satisfy for determining whether injunctive relief would be appropriate, is to show probable success on the merits since he has established only a possibility of irreparable injury. From the record it can be seen that while it is possible that the plaintiff could be successful on the merits, it is not probable. Perhaps further discovery and investigation will enable him to prove bad faith, self-dealing or an abuse of discretion on the part of the defendants. However, as the movant, he has the burden of establishing that he is clearly entitled to the preliminary injunction he seeks. *Mayview Corp. v. Rodstein,* 480 F.2d 714, 719 (9th Cir.1973); *Dymo Industries, Inc. v. Tapeprinter, Inc.,* 326 F.2d 141, 143 (9th Cir.1964); *Sierra Club v. Hickel,* 433 F.2d 24, 33 (9th Cir.1970). Although no Nevada case has been found on point, the trend of decisions in other jurisdictions suggests that the conduct of the defendants was probably legal in the absence of improper motive or intent. *See, e.g., Moran v. Household International, Inc.,* Del.Chancery Ct. No. 7730 (1/29/85). It cannot be said at this juncture that the plaintiff has demonstrated probable success on the merits.

IT IS, THEREFORE, HEREBY ORDERED that plaintiff's motion for a preliminary injunction be DENIED.