HARVEY COHEN, AN INDIVIDUAL, APPELLANT, *v.* MIRAGE RE-
SORTS, INC., A NEVADA CORPORATION; MIRAGE ACQUI-
SITION SUB, INC., A NEVADA CORPORATION; JEFFREY
PAUL JACOBS, AN INDIVIDUAL; LOUIS SPOSATO, AN
INDIVIDUAL; JAMES SCIBELLI, AN INDIVIDUAL; FORREST
WOODWARD, AN INDIVIDUAL; AVIS P. JANSEN, AN
INDIVIDUAL; JACOBS ENTERTAINMENT, NEVADA, INC.,
A NEVADA CORPORATION; AND DIVERSIFIED OPPORTUNI-
TIES GROUP, LTD., AN OHIO LIMITED LIABILITY COMPANY,
RESPONDENTS.

No. 36434

February 7, 2003

62 P.3d 720

[Rehearing denied March 14, 2003]

*Harrison Kemp & Jones, Chtd.,* and *J. Randall Jones* and *Jennifer C. Popick,* Las Vegas; *Berger & Montague, P.C.,* and *Jacob A. Goldberg, Jill E. Sterbakov* and *Sherrie R. Savett,* Philadelphia, Pennsylvania, for Appellant.

*Schreck Brignone Godfrey* and *Todd L. Bice* and *James J. Pisanelli,* Las Vegas, for Respondents.

Before SHEARING, ROSE and BECKER, JJ.

## OPINION

By the Court, BECKER, J.:

The district court dismissed a former shareholder's class action complaint alleging wrongful conduct on the part of the directors and other parties involved in a corporate merger.[1] The shareholder appeals, asserting he has standing, individually and on behalf of the class, to bring a suit for monetary damages when wrongful conduct results in an improper merger. Respondents, the directors and other parties involved in the merger, argue that the dismissal was appropriate because the complaint does not seek damages arising from a wrongful merger. Instead, they maintain the complaint seeks to untimely increase the valuation of the merged corporation's shares in violation of the dissenters' rights provisions of NRS 92A.300–92A.500[2] or that the complaint is barred by the affirmative defense of acquiescence. Respondents also assert that the complaint seeks damages for harm to the corporation, derivative claims that cannot be brought by former shareholders.

We conclude that some of the allegations and causes of action seek damages for lost profits, usurpation of corporate opportunities, or mismanagement of the corporation, and that these claims

---

[1] The caption below and on appeal reflects that Harvey Cohen is suing only in his individual capacity. However, the complaint states that Cohen is also the representative for a class action by former shareholders of the Boardwalk Casino. We are unable to determine from the record if the class was ever certified.

[2] The 1997 versions of the statutes apply to the facts of this case. Various amendments were made to the dissenters' rights provisions of NRS Chapter 92A in the 1999 and 2001 legislative sessions. These amendments do not affect our analysis.

were properly dismissed as derivative claims. However, the remaining allegations involve wrongful conduct in approving the merger and/or valuing the merged corporation's shares. These are not derivative claims. Moreover, the exclusive remedy provision of NRS 92A.380 does not bar such claims. NRS 92A.380 does not apply when fraudulent or unlawful conduct relating to the approval of a merger is alleged. Finally, although we recognize the doctrine of acquiescence may bar claims arising from wrongful conduct in the approval of a merger, only in very rare circumstances will the doctrine be applied to dismiss a complaint pursuant to a Rule 12(b) motion to dismiss. Such circumstances do not exist in this case.

Because Nevada is a notice pleading state, the district court should have granted the shareholder's oral request to amend the complaint, clarifying that the shareholder was seeking damages as a result of an improper merger rather than merely contesting the value of the acquisition price after the statutory time frames expired. Therefore, we affirm in part and reverse in part the district court's order and remand this matter for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

Appellant Harvey Cohen was a minority shareholder in the Boardwalk, a small, publicly held casino on Las Vegas Boulevard, "The Strip." The Boardwalk had 1,200 feet of Strip frontage located between the Bellagio and the Monte Carlo, large casinos in which the Mirage Resorts had an interest.[3] Mirage also owned twenty-three acres of land adjacent to the Boardwalk.

Mirage wished to acquire the Boardwalk as well as three parcels of land surrounding the Boardwalk. The three parcels were either owned by entities connected with the Boardwalk's majority shareholders and directors or were subject to options to purchase in favor of the Boardwalk. Mirage sought to negate the Boardwalk's options and acquire the adjacent properties for purposes of expansion.

Mirage made an offer to acquire the Boardwalk's shares through a merger with a Mirage subsidiary, Acquisition. Prior to or contemporaneous with the merger, Mirage acquired the surrounding parcels.

On May 27, 1998, the Boardwalk convened a special shareholder meeting to consider the offer. A majority of the shareholders approved the merger. The merger was consummated on

[3]Several different Mirage Resorts subsidiaries or affiliated entities were involved in transactions referred to in the complaint. For purposes of this opinion, all Mirage Resorts affiliated entities or subsidiaries are simply referred to as Mirage.

June 30, 1998. Cohen and other members of the class tendered their shares without challenging the merger's validity or claiming dissenters' rights pursuant to NRS 92A.380–92A.500, setting forth the procedures for challenging the valuation of shares in a merger.

On September 28, 1999, Cohen filed suit for damages, alleging breach of fiduciary duty and/or loyalty by the Boardwalk's majority shareholders, board of directors and financial advisors, as well as tortious interference claims against Mirage and Acquisition. Cohen asserts Mirage conspired with the Boardwalk's majority shareholders and directors to purchase the Boardwalk at an artificially low price by offering special transactions to majority shareholders and/or members of the Boardwalk's board of directors. Cohen claims that Mirage bought land or rights owned or controlled by majority shareholders or directors in properties around or involving the Boardwalk at inflated prices. Cohen contends that these shareholders and directors then agreed to approve or recommend the merger for an amount per share that was less than the fair value of the Boardwalk's stock. Finally, Cohen asserts that the directors mismanaged the Boardwalk, causing decreased profits, and that they or majority shareholders usurped corporate opportunities.

The remaining allegations involve the company that rendered a fairness opinion to the Boardwalk's stockholders regarding the value of Boardwalk's stock and the merger price. Cohen alleges that a former Boardwalk director controlled the company and that the ex-director received special incentives to prepare an inaccurate opinion.

Respondents moved to dismiss for failure to state a claim upon which relief could be granted, denying any wrongdoing. Respondents argued that, even assuming the truth of the allegations, Cohen had no standing to sue for breach of fiduciary duty because he failed to exercise his statutory rights to dissent to the merger and tendered his shares pursuant to the merger. Respondents further asserted that the provisions of NRS 92A.300–92A.500 are the exclusive method for a dissenting shareholder to challenge the value of a merged corporation's stock, and that Cohen and the class shareholders were barred from challenging the value of the stock because they failed to exercise their statutory right to dissent. Respondents also contended that because Cohen and the class were no longer shareholders, they could not bring derivative claims for lost profits and usurpation of corporate opportunities.

Cohen responded by acknowledging that an ex-shareholder cannot bring derivative claims and that a shareholder who wanted to challenge the price set for acquiring a corporation's stock in a merger was limited to the time lines and valuation proceedings set forth in NRS 92A.300–92A.500. Cohen contended, however, that

the complaint asserted that the merger was approved unlawfully or as a result of wrongful conduct and therefore the time frames set forth for an appraisal proceeding did not apply. Thus, he should be permitted individually, and as a representative of the class, to establish that the merger was approved as a result of wrongful conduct on the part of the directors or majority shareholders.

Cohen claimed that if the merger was accomplished through wrongful conduct, then he had the right to seek monetary damages, including any difference in value between the merger price and the fair value of his stock. Because he was seeking monetary damages arising from an allegedly invalid merger, Cohen contended the claims were individual and not derivative in nature and the motion to dismiss should be denied. Cohen also indicated that if the court found the complaint confusing, he would gladly amend it to clarify his position.

In reply, respondents alleged that the complaint did not state a cause of action for damages relating to an invalid merger. Respondents contended that the complaint was simply a thinly disguised method of attacking the value of the Boardwalk's shares in violation of NRS 92A.440(3).[4] Respondents also asserted that Cohen knew about all of the alleged wrongdoing before tendering his shares. Respondents argued that when a shareholder tenders his shares with full knowledge of facts that would justify challenging the validity of the merger, he or she acquiesces in the merger and is barred under the doctrine of acquiescence from later challenging the merger. Therefore, according to respondents, Cohen was barred from seeking monetary damages over a year after he tendered his shares with full knowledge of any irregularities.

Although matters outside the complaint were attached to or addressed in the pleadings, the district court declined to convert the motion to one for summary judgment. The district court granted respondents' motion to dismiss, finding that all of Cohen's claims were derivative in nature and that Cohen and other ex-shareholders lacked standing to assert the claims. Cohen then filed this appeal.

## DISCUSSION

This case involves the rights of dissenting shareholders to challenge the validity of corporate mergers, issues of first impression in the State of Nevada. Under Nevada law, a corporate merger must be approved by a majority of the corporation's shareholders.[5]

---

[4]NRS 92A.440(3) provides that:

> The stockholder who does not demand payment or deposit his certificates where required, each by the date set forth in the dissenter's notice, is not entitled to payment for his shares under this chapter.

[5]NRS 92A.120(5) (majority necessary unless statute or corporate documents require otherwise).

The existing shareholders then substitute their stock ownership in the old corporation for stock ownership in the new merged corporation.[6] Shareholders who oppose the merger are not forced to become stockholders in the new corporation. Instead, the statutes give such shareholders three choices: (1) accept the terms of the merger and exchange their existing shares for new shares; (2) dissent from the merger, compelling the merged corporation to purchase their shares pursuant to a judicial appraisal proceeding; and/or (3) challenge the validity of the merger based on unlawful or wrongful conduct committed during the merger process.[7] The procedures that govern dissenters' rights are set forth in NRS 92A.300–92A.500.

▮▮▮▮▮▮

The provisions of NRS 92A.300–92A.500 were added to Nevada's statutes by the 1995 Legislature.[8] They are patterned after, or are identical to, the provisions of the 1984 Model Business Corporation Act ("Model Act").[9] In turn, the Model Act is based upon case law from Delaware and New York.[10] The Model Act and Nevada's statutes are designed to facilitate business mergers, while protecting minority shareholders from being unfairly impacted by the majority shareholders' decision to approve a merger.[11]

At common law, merger approval required the unanimous vote of the shareholders.[12] Before the enactment of dissenters' rights

---

[6]NRS 92A.250(1)(f).

[7]*See Alabama By-Products v. Cede & Co.,* 657 A.2d 254 (Del. 1995).

[8]Some of the provisions of Chapter 92A were previously part of Chapter 78. In 1995, the Legislature shifted dissenters' rights language from other parts of the Nevada Revised Statutes and incorporated them into Chapter 92A for ease of reference. The Legislature also added new provisions to bring Nevada more in line with the Model Business Corporation Act.

[9]*See* Hearing on A.B. 655 Before the Joint Senate and Assembly Comms. on Judiciary, 66th Leg. (Nev., May 7, 1991); Keith Paul Bishop, *Nevada Law of Corporations & Business Organizations* § 13.1 (1998).

[10]Model Bus. Corp. Act Ann. § 13.02 cmt. at 13-16, 13-17 (3d ed. Supp. 1996). Because the Legislature relied upon the Model Act and the Model Act relies heavily on New York and Delaware case law, we look to the Model Act and the law of those states in interpreting the Nevada statutes. *See Craigo v. Circus-Circus Enterprises,* 106 Nev. 1, 3, 786 P.2d 22, 23 (1990) (noting "rule of statutory interpretation that when a statute is derived from a sister state, it is presumably adopted with the construction given it by the highest court of the sister state").

[11]*See* Hearing on A.B. 655 Before the Joint Senate and Assembly Comms. on Judiciary, 66th Leg. (Nev., May 7, 1991); Bishop, *supra* note 9, § 13.1.

[12]*Alabama By-Products,* 657 A.2d at 258; *see also Steinberg v. Amplica, Inc.,* 729 P.2d 683, 687 (Cal. 1986); *Schloss Associates v. C & O Ry.,* 536 A.2d 147, 152 (Md. Ct. Spec. App. 1988); *In re Jones & Laughlin Steel Corp.,* 398 A.2d 186, 191 (Pa. 1979).

statutes, minority shareholders might block a merger simply because they disagreed with the majority's view that the merger was advisable.[13] Dissenters' rights statutes do away with the common-law need for unanimous consent to the merger.[14] Mergers are approved by a majority vote of the shareholders, and the Model Act limits the ability of minority shareholders to challenge a merger. Under the Model Act, minority shareholders are no longer able to enjoin a merger simply because they disagree with the majority's decision.[15] Instead, minority shareholders are limited to dissenting to the merger and seeking an independent evaluation of the fair value of their stock.[16]

However, the states and the Model Act also recognize two circumstances when minority shareholders should be able to challenge the merger process.[17] A merger may be challenged if it is unlawful, that is, procedurally deficient. For example, it may have been approved in a manner inconsistent with the articles of incorporation or there may have been irregularities in the voting process.[18] In addition, minority shareholders may seek to stop a merger if fraud or material misrepresentation affected the shareholder vote on the merger; that is, the shareholders approved the merger based upon materially incorrect information.[19] Under either theory, minority shareholders may bring suit to enjoin or rescind the merger or to recover monetary damages attributable to the loss of their shareholder interest caused by an invalid merger. They may also allege that the merger was accomplished through the wrongful conduct of majority shareholders, directors, or officers of the corporation and attempt to hold those individuals liable for monetary damages under theories of breach of fiduciary duty or loyalty.[20]

Challenges to the validity of a merger based on fraud usually encompass either or both of the following: (1) lack of fair dealing or (2) lack of fair price.[21] Both involve corporate directors' general duties to make independent, fully informed decisions when rec-

---

[13]*See Alabama By-Products,* 657 A.2d at 258.

[14]*Id.; see also Steinberg,* 729 P.2d at 687; *Schloss Associates,* 536 A.2d at 152; *In re Jones & Laughlin,* 398 A.2d at 191.

[15]Model Bus. Corp. Act Ann. § 13.02 cmt. at 13-16 (3d ed. Supp. 1996).

[16]*Id.* at 13-16 (3d ed. Supp. 1998-99).

[17]*Id.* at 13-16 to 13-17 (3d ed. Supp. 1998-99).

[18]*Id.*

[19]*See* 15 William Meade Fletcher et al., *Fletcher Cyclopedia of the Law of Private Corporations* § 7160 (perm. ed., rev. vol. 1999).

[20]*Parnes v. Bally Entertainment Corp.,* 722 A.2d 1243, 1245 (Del. 1999).

[21]*Id.*

ommending a merger and to fully disclose material information to the shareholders before a vote is taken on a proposed merger.[22] They also can involve allegations that majority shareholders breached their limited fiduciary duties to minority shareholders.[23]

Lack of fair dealing involves allegations that the board of directors did not make an independent, informed decision to recommend approval of the merger,[24] or that the majority shareholders approved the merger at the expense of the minority shareholders.[25] Cases involving fair dealing frequently contain claims that directors, officers, or majority shareholders had conflicts of interest or were improperly compensated or influenced in return for their approval of the merger and that the shareholders lacked material information regarding the merger when they voted for it.[26] These cases also frequently involve the timing of the merger, merger negotiations, how the merger was structured, and the approval process.[27]

Lack of fair price may involve similar allegations plus claims that the price per share was deliberately undervalued, but it can also include negligent conduct.[28] For example, the directors may have hired incompetent or inexperienced persons to determine if the merger price was fair or to evaluate the fair value of the corporation's stock.[29]

Statutes that limit a minority shareholder's right of dissent to an appraisal proceeding are known as exclusivity provisions.[30] Most states have some type of exclusivity provision in their corporate law.[31] Like Nevada's provisions, they provide that, absent unlawful procedures or fraud, a minority shareholder has only two options when confronted with a merger. The minority shareholder may dissent from the merger and seek an independent valuation or tender his or her shares and accept the merger price for the stock.[32]

---

[22]*Weinberger v. UOP, Inc.*, 457 A.2d 701, 710-11 (Del. 1983).

[23]*Id.*

[24]*Id.* at 711.

[25]*Alpert v. 28 Williams St. Corp.*, 483 N.Y.S.2d 667, 674-75 (Ct. App. 1984).

[26]*Weinberger*, 457 A.2d at 711-12.

[27]*Id.* at 711.

[28]*Id.*

[29]*Id.* at 711-12.

[30]15 Fletcher, *supra* note 19, § 7160.

[31]*Stringer v. Car Data Systems, Inc.*, 841 P.2d 1183, 1184 (Or. 1992).

[32]*Columbus Mills, Inc. v. Kahn*, 377 S.E.2d 153, 154 (Ga. 1989); *Johnson v. Baldwin*, 69 S.E.2d 585, 591 (S.C. 1952).

Nevada's exclusivity provision is contained in NRS 92A.380, which provides:

1. Except as otherwise provided in NRS 92A.370 and 92A.390, a stockholder is entitled to dissent from, and obtain payment of the fair value of his shares in the event of any of the following corporate actions:

(a) Consummation of a plan of merger to which the domestic corporation is a constituent party:

(1) If approval by the stockholders is required for the merger by NRS 92A.120 to 92A.160, inclusive, or the articles of incorporation and he is entitled to vote on the merger; or

(2) If the domestic corporation is a subsidiary and is merged with its parent under NRS 92A.180.

(b) Consummation of a plan of exchange to which the domestic corporation is a party as the corporation whose subject owner's interests will be acquired, if he is entitled to vote on the plan.

(c) Any corporate action taken pursuant to a vote of the stockholders to the event that the articles of incorporation, by-laws or a resolution of the board of directors provides that voting or nonvoting stockholders are entitled to dissent and obtain payment for their shares.

2. A stockholder who is entitled to dissent and obtain payment under NRS 92A.300 to 92A.500, inclusive, may not challenge the corporate action creating his entitlement unless the action is unlawful or fraudulent with respect to him or the domestic corporation.[33]

A dissenting shareholder who wishes to attack the validity of the merger or seek monetary damages based upon improper actions during the merger process must allege wrongful conduct that goes to the approval of the merger.[34] Our conclusion is supported by case law from other jurisdictions. Shareholders are limited to appraisal-type actions unless they allege wrongful conduct or procedures in the approval process.[35] In addition, the term "fraudu-

[33]*See* 1995 Nev. Stat., ch. 586, § 44, at 2087.

[34]15 Fletcher, *supra* note 19, § 7160.

[35]*See, e.g., Mullen v. Academy Life Ins. Co.,* 705 F.2d 971, 974 (8th Cir. 1983) (interpreting New Jersey law); *Twenty Seven Trust v. Realty Growth Investors,* 533 F. Supp. 1028, 1036 (D. Md. 1982); *Cede & Co. v. Technicolor, Inc.,* 542 A.2d 1182, 1187-88 (Del. 1988); *Yeager v. Paul Semonin Co.,* 691 S.W.2d 227, 228 (Ky. Ct. App. 1985); *Schloss Associates v. C & O Ry.,* 536 A.2d 147, 153 (Md. Ct. Spec. App. 1988); *Sifferle v. Micom Corp.,* 384 N.W.2d 503, 510 (Minn. Ct. App. 1986); *Alpert,* 483 N.Y.S.2d at 673; *State ex rel. The Ohio Co. v. Maschari,* 553 N.E.2d 1356, 1358-59 (Ohio 1990).

lent,'' as used in the Model Act, has not been limited to the elements of common-law fraud; it encompasses a variety of acts involving breach of fiduciary duties imposed upon corporate officers, directors, or majority shareholders.[36] We conclude that the term ''fraudulent'' as used in NRS 92A.380(2) has a similar scope.

Claims challenging the validity of a merger should be asserted before the completion of the merger.[37] This is accomplished by bringing an action to enjoin the merger.[38] If injunctive relief is denied and the merger is carried out, a dissenting shareholder may still pursue a claim for rescission and/or monetary damages on the grounds of fraud or unlawfulness. The dissenting shareholder may also assert and preserve his or her appraisal rights in conjunction with challenging the merger.[39]

Finally, dissenting shareholders may forfeit even their appraisal remedies if they fail to comply with the time lines for exercising their dissenters' rights.[40] Failure to comply with the notice and procedure statutes deprives dissenting stockholders of their appraisal remedy.[41]

Cohen concedes that he and the other class members failed to exercise their dissenters' rights under the statutes. Therefore, they are not entitled to maintain a court action based solely on a theory that the price paid for their shares pursuant to the merger was less than the fair value of the shares. Cohen argues, however, that he is still entitled to seek damages if the merger was based upon fraud or misrepresentation. If he is successful in proving that the merger was the result of wrongful conduct, his monetary damages may include the difference, if any, between the merger price and the fair value of the shares. Cohen asserts that the time line for seeking the appraisal remedy does not apply to claims for monetary damages arising from an improper merger. We agree.

Although NRS 92A.380(2) refers to bringing a challenge to the corporate action giving rise to the shareholder's right to dissent (*i.e.,* the merger), case law suggests that shareholders' remedies in

---

[36]*Sifferle,* 384 N.W.2d at 507; *Stringer,* 841 P.2d at 1192-93.

[37]*See Cede,* 542 A.2d at 1191.

[38]*See id.* at 1190-91.

[39]*Id.; see* 15 Fletcher, *supra* note 19, § 7160.

[40]NRS 92A.420(2); *Columbus Mills,* 377 S.E.2d at 154; *Kohler Co. v. Sogen Intern. Fund, Inc.,* 608 N.W.2d 746, 751 (Wis. Ct. App. 2000).

[41]*Columbus Mills,* 377 S.E.2d at 154; NRS 92A.440(3).

such a challenge are not limited to injunctions or rescission.[42] Once shareholders prove that the merger was wrongfully accomplished, they may also receive compensatory and punitive damages, including the ability to litigate the value of the merged corporation's stock.[43] Thus, the mere fact that Cohen's complaint alleges that his stock was worth more than the amount he received under the merger does not constitute grounds for dismissing it under NRS 92A.380(2) so long as the complaint also contains allegations that the merger was approved through unlawful or fraudulent conduct.[44]

However, respondents contend that even if the complaint challenges the validity of the merger, the district court did not err in dismissing the complaint because it is barred by the doctrine of acquiescence, an affirmative defense akin to estoppel and waiver.[45]

## I. *Doctrine of acquiescence*

Shareholders who vote in favor of the merger generally have no standing to contest the validity of the merger.[46] Thus, only a dissenting shareholder is usually permitted to maintain an action challenging the merger process. In addition, even a dissenting shareholder generally loses the right to challenge a merger's validity if he or she tenders the stock and receives the merger price before initiating a suit disputing the validity of the merger.[47]

---

[42]*Cede,* 542 A.2d at 1191.

[43]*Id.*

[44]Model Bus. Corp. Act Ann. § 13.02 cmt. at 13-6 (3d ed. Supp. 1998-99); *Weinberger,* 457 A.2d at 703; *Coggins v. New England Patriots Football Club,* 492 N.E.2d 1112, 1116-17 (Mass. 1986); *Werner v. Alexander,* 502 S.E.2d 897, 900-02 (N.C. Ct. App. 1998); *American Network Group, Inc. v. Kostyk,* 834 S.W.2d 296, 299 (Tenn. Ct. App. 1991); *Hoggett v. Brown,* 971 S.W.2d 472, 482 (Tex. App. 1997).

[45]15 Fletcher, *supra* note 19, § 7161; *Kahn v. Household Acquisition Corp.,* 591 A.2d 166, 176 (Del. 1991). The dissent urges us to reject the doctrine of acquiescence because Nevada, unlike Delaware, has eliminated the distinction between law and equity. While it is true we do not maintain separate courts of law and equity, we apply equitable doctrines such as estoppel and waiver as a bar to recovery. In addition, the dissent fails to consider that an action to invalidate a merger is equitable in nature and subject to equitable defenses. *See Cede,* 541 A.2d at 1190; *Nagy v. Bistricer,* 770 A.2d 43, 50 (Del. Ch. 2000); *Alpert,* 483 N.Y.S.2d at 673; *Breed v. Barton,* 444 N.Y.S.2d 609, 611 (1981); *Bayberry Associates v. Jones,* 783 S.W.2d 553, 561-62 (Tenn. 1990); *Matteson v. Ziebarth,* 242 P.2d 1025, 1032 (Wash. 1952).

[46]*Kahn,* 591 A.2d at 176; *Casey v. Brennan,* 780 A.2d 553, 573-76 (N.J. Super. Ct. App. Div. 2001).

[47]*Bershad v. Curtiss-Wright Corp.,* 535 A.2d 840, 848 (Del. 1987); *Schmid v. Clarke, Inc.,* 515 N.W.2d 665 (Neb. 1994); *Vierling v. West Chemical Products, Inc.,* 533 N.Y.S.2d 328 (App. Div. 1988); *Trounstine v. Remington Rand, Inc.,* 194 A. 95, 99 (Del. Ch. 1937).

However, these general rules assume that the shareholders were properly informed about the merger process and the methodology used to arrive at a merger price. Misinformed shareholders retain their right to challenge the merger regardless of their vote on the merger and a tender of their shares.[48]

Shareholders who vote for, or surrender their shares and accept the merger price, with full knowledge of wrongful conduct or reasons to challenge the validity of a merger are said to have acquiesced in the merger and may not thereafter challenge the merger.[49] Former shareholders may also be barred through the application of estoppel doctrines.[50] These concepts are based on a desire to promote the finality of mergers and encourage shareholders to take prompt action when they seek to invalidate a merger based on wrongful or unlawful conduct.[51]

The need for such actions to be brought in a prompt fashion is obvious. Corporations make myriad decisions in reliance upon shareholder approval of a merger. Delays in challenging the validity of the merger can work a great detriment to both corporations involved in the merger process and ultimately to the shareholders of the corporations.

For these reasons, courts have applied the doctrines of acquiescence and estoppel to bar challenges to mergers.[52] Estoppel is the doctrine that applies to shareholders who vote for a merger and then later attempt to challenge the validity of the merger.[53] Acquiescence applies to shareholders who are fully aware of a breach of duty that affects the merger's validity, but choose not to pursue an action to enjoin the merger or for monetary damages if the merger has already been completed. Instead, the shareholders either tendered their shares and accepted the merger price or exercised their dissenters' right to an independent appraisal.[54]

Under the general rule set forth in *Bershad v. Curtiss-Wright Corp.*,[55] Cohen lacks standing to challenge the Boardwalk merger

---

[48]*Clements v. Rogers,* 790 A.2d 1222, 1236-38 (Del. Ch. 2001); *Turner v. Bernstein,* 776 A.2d 530, 548 (Del. Ch. 2000); *Cede,* 542 A.2d at 1188; *Casey,* 780 A.2d at 574-75; *Matteson,* 242 P.2d at 1033.

[49]15 Fletcher, *supra* note 19, § 7161.

[50]*Id.*

[51]*Kahn,* 591 A.2d at 176-77; *Casey,* 780 A.2d at 573-75; *Good, et al. v. Lackawanna Leather Co., et al.,* 233 A.2d 201, 212 (N.J. Super. Ct. Ch. Div. 1967); *Windhurst v. Central Leather Co.,* 138 A. 772, 774-76 (N.J. Ch. 1927).

[52]*Kahn,* 591 A.2d at 176.

[53]*Id.*

[54]*Id.* at 177; *Trounstine,* 194 A. at 99.

[55]535 A.2d at 848.

more than a year after he tendered his shares of stock. However, as noted in *Cede & Co. v. Technicolor, Inc.*,[56] the general doctrine does not apply when the unlawful or wrongful conduct affecting the merger's validity was unknown to the stockholders until after they approved the merger and/or tendered their shares of stock. In such cases, the former shareholders may still bring a cause of action for damages resulting from an invalid merger.[57] *Bershad* only applies to informed shareholders.[58]

Former shareholders, however, cannot simply seek more money for their stock. They must assert and prove in an equitable action that the merger was improper.[59] If this is proven, then they are entitled to any monetary damages they are able to prove were proximately caused by the improper merger.[60] Moreover, damages are not limited to the surviving corporation. They may also be levied against the individuals whose wrongful conduct led to the approval of the merger or the unfair stock evaluation.[61]

In applying these standards, courts have constructed a framework for analyzing post-merger challenges by shareholders who vote for the merger or who tender their shares. The shareholder bears the initial burden of proving facts that would support a finding that the merger was accomplished through unlawful means or wrongful conduct.[62] Once the shareholder meets the threshold requirement, the burden shifts to the defendants to prove that the doctrines of acquiescence or estoppel apply.[63] That is, the defendants must prove that the shareholder voted for the merger or tendered his or her shares with full knowledge of the wrongful acts.[64]

What constitutes full knowledge is left to a case-by-case analysis. Mergers accomplished through arm's-length negotiations with independent majority shareholders or directors require less judicial scrutiny than mergers where corporations have common directors or majority shareholders or where the majority sharehold-

---

[56]542 A.2d 1182, 1188-89 (Del. 1988).

[57]*Id.*

[58]*Turner,* 776 A.2d at 548; *Casey,* 780 A.2d at 574.

[59]*Cede,* 542 A.2d at 1191.

[60]*Id.* at 1186-87.

[61]*Id.* at 1189.

[62]*Weinberger v. UOP, Inc.,* 457 A.2d 701, 703 (Del. 1983); *Alpert v. 28 Williams St. Corp.,* 483 N.Y.S.2d 667, 675 (Ct. App. 1984).

[63]*Weinberger,* 457 A.2d at 703.

[64]*Turner,* 776 A.2d at 548; *Casey,* 780 A.2d at 574-75.

ers or directors have conflicts of interest.[65] This application of higher scrutiny arises from the duty of candor and disclosure that is imposed upon directors (and, where a conflict of interest exists, majority shareholders) in the merger process.[66]

The omitted information or misrepresentation must be material in nature. Information is considered material "if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote" on the proposed merger.[67]

Finally, for acquiescence or other equitable defenses to apply, shareholders must be aware of all the alleged wrongdoing, misrepresentation, or omitted information alleged in support of the merger challenge at the time they vote, approve the merger, or tender their shares. Shareholders who possess only some knowledge of wrongdoing before approving the merger or tendering their shares are not barred by the doctrine of acquiescence.[68]

Respondents contend that, on the face of the complaint, Cohen knew of the alleged wrongful conduct at the time of the special shareholders' meeting, and he raised questions about these issues. Respondents assert that Cohen therefore falls within the *Bershad* rule, and the doctrine of acquiescence bars his claim. Although there are statements in the complaint indicating Cohen had some knowledge of the alleged unlawful or wrongful conduct before tendering his shares, the statements are insufficient to determine that Cohen tendered his shares with full knowledge of improper conduct.[69] Therefore, the complaint cannot be dismissed on a Rule 12(b) motion. We now turn to the alternative ground for dismissal—the finding that the complaint contained only derivative claims that cannot be instituted by a former shareholder.

---

[65]15 Fletcher, *supra* note 19, § 7160.50; *Sifferle v. Micom Corp.*, 384 N.W.2d 503, 507 (Minn. Ct. App. 1986); *Alpert,* 483 N.Y.S.2d at 674-75.

[66]*Alpert,* 483 N.Y.S.2d at 675.

[67]*Bershad,* 535 A.2d at 846 (internal quotation marks and citations omitted).

[68]*Casey,* 780 A.2d at 574-75; *Clements,* 790 A.2d at 1236-38; *Turner,* 776 A.2d at 548.

[69]We recognize that attachments to the motion to dismiss and arguments in the pleadings provide greater information on Cohen's knowledge, however, such information cannot be considered in the context of a motion to dismiss, and we take no position on this issue. It is a matter best left to the district court upon remand. We note, however, that even if Cohen tendered his shares with full knowledge, it would still not be grounds for dismissing the entire class action. *Bershad,* 535 A.2d at 848.

## II. *Derivative claims*

The primary reason articulated by the district court in its order dismissing the complaint was that the claims were derivative in nature. It is true that a former shareholder has no standing to sue for breach of fiduciary duty on a derivative claim.[70] A derivative claim is one brought by a shareholder on behalf of the corporation to recover for harm done to the corporation.[71] Because a derivative claim is brought on behalf of the corporation, a former shareholder does not have standing to assert a derivative claim.[72] A former shareholder does, however, have standing to seek relief for direct injuries that are independent of any injury suffered by the corporation.[73]

A claim brought by a dissenting shareholder that questions the validity of a merger as a result of wrongful conduct on the part of majority shareholders or directors is properly classified as an individual or direct claim. The shareholder has lost unique personal property—his or her interest in a specific corporation.[74] Therefore, if the complaint alleges damages resulting from an improper merger, it should not be dismissed as a derivative claim.[75] On the other hand, if it seeks damages for wrongful conduct that caused harm to the corporation, it is derivative and should be dismissed.[76] We must therefore turn to an analysis of the complaint.

## III. *Sufficiency of complaint*

The complaint is composed of a number of sections. The causes of action do not set forth claims for relief based upon factual allegations contained in the claims themselves. Rather, each claim incorporates by reference all of the factual allegations in the com-

[70]*Parnes v. Bally Entertainment Corp.*, 722 A.2d 1243, 1245 (Del. 1999); *Alabama By-Products v. Cede & Co.*, 657 A.2d 254, 264 (Del. 1995); *Grace Bros., Ltd. v. Farley Industries, Inc.*, 450 S.E.2d 814, 816 (Ga. 1994); *Cede*, 542 A.2d at 1188; *Gabhart v. Gabhart*, 370 N.E.2d 345, 356 (Ind. 1977).

[71]*Nelson v. Sierra Constr. Corp.*, 77 Nev. 334, 341, 364 P.2d 402, 405 (1961); *Kramer v. Western Pacific Industries*, 546 A.2d 348, 351 (Del. 1988).

[72]*See* NRCP 23.1; *Keever v. Jewelry Mountain Mines*, 100 Nev. 576, 577, 688 P.2d 317, 317 (1984); *Kramer*, 546 A.2d at 351.

[73]*See Parnes*, 722 A.2d at 1245; *Kramer*, 546 A.2d at 351.

[74]*See Parnes*, 722 A.2d at 1245; *see also Smith v. Gray*, 50 Nev. 56, 72-73, 250 P. 369, 375 (1926).

[75]*See Parnes*, 722 A.2d at 1245; *Coggins v. New England Patriots Football Club*, 492 N.E.2d 1112, 1116 (Mass. 1986); *Hoggett v. Brown*, 971 S.W.2d 472, 482 (Tex. App. 1997).

[76]*Parnes*, 722 A.2d at 1244-45.

plaint. Thus, each claim for relief is based upon the totality of the factual allegations. Because some of the factual allegations may support an individual claim for relief, while others may be derivative, we have focused on the factual allegations as a whole in analyzing the sufficiency of the complaint.

Aside from general assertions describing the Boardwalk and Mirage-related facilities, the complaint asserts two types of allegations. The first type involves actions by various parties that allegedly impaired the Boardwalk's revenue production or expansion, while the second involves allegations that the Boardwalk key directors, officers, or majority shareholders were given various incentives to improperly approve a merger with Mirage.

In the first category of allegations, Cohen asserts that: (1) improper management of the Boardwalk's race book resulted in lost profits over a period of years, (2) Mirage used agents or subsidiaries to acquire the Boardwalk bonds and land adjacent to the Boardwalk so as to avoid generating increases in the Boardwalk's stock and to impair the Boardwalk's ability to expand, (3) the Boardwalk management and/or Mirage caused the Boardwalk to lose land options or opportunities to purchase land for expansion, and (4) the price paid for the fairness opinion was excessive.

The second category of allegations contains assertions that: (1) Mirage paid more than fair market value for adjacent land and options to purchase land to entities owned or controlled by the Boardwalk's directors, officers, or majority shareholders; (2) the excessive payments were made in return for directors', officers', or majority shareholders' votes to approve the merger; and (3) the excessive fee was paid for the fairness opinion in return for the issuance of an opinion that would undervalue the Boardwalk's stock.

Based on these allegations, the complaint asserts four claims for relief. The first claim alleges breach of the duty of loyalty against members of the board of directors, on grounds that they received inducements to approve the merger at a price per share below the fair market value of the stock. The second claim alleges breach of the duty of loyalty against the former director whose company rendered the fairness opinion, on grounds that the opinion was erroneous and the price for services rendered excessive. The third claim alleges breach of fiduciary duty against the entities involved in conveying the Boardwalk's option to purchase adjacent land to Mirage. It contains allegations that the loss of the Boardwalk's option damaged the corporation, as well as allegations that the parties involved were overpaid for their interests in the parcel as an inducement for their votes to approve the merger. The final claim for relief alleges "tortious interference with fiduciary duty" and is directed against Mirage and Acquisition. It seeks damages for the alleged conspiracy to acquire the Boardwalk's stock at below-market

value by entering into a series of transactions with majority shareholders and directors designed to induce them to support the merger.

Each of the claims seeks monetary damages, primarily the difference between what was paid for the shareholders' stock and the stock's fair market value. The claims also contain language seeking punitive damages and attorney fees. In addition, the fourth claim contains language explaining why the shareholders have not made a demand upon the board of directors for redress, language more appropriate to a derivative action. The last portion of the complaint is the prayer for relief. The prayer seeks general, special, compensatory and punitive damages, reasonable attorney fees, and ''any further and additional relief'' the court deems ''just and equitable.'' Nowhere in the complaint does it state that the shareholders seek to prove that the merger was invalid because it was accomplished by unlawful means or fraudulent conduct.

Respondents argue that the complaint does not state a cause of action for rescission or monetary damages arising from an invalid merger and that it is an untimely attempt to assert dissenters' appraisal rights. Cohen asserts that because the factual allegations, if true, state grounds for challenging the merger as being unlawful or fraudulent, the failure to specifically plead rescission or the invalidity of the merger does not warrant dismissal of the complaint because Nevada is a notice pleading state. In the alternative, Cohen contends that the district court should have allowed him to amend the complaint to state a cause of action for damages resulting from the loss of his shareholder's interest caused by an invalid merger. Cohen asserts that he made an offer to clarify the complaint if the district court was inclined to view it as a derivative action.

Examining the amended complaint, we conclude that the allegations involving the race book are derivative in nature. They allege that officers, directors, or majority shareholders mismanaged the corporation resulting in a loss of revenue. This is harm to the corporation, shared by all stockholders and not related to an individual stockholder. To the extent these allegations were intended to state a cause of action, the district court was correct in dismissing the allegations as derivative claims barred by lack of standing.

We reach the same conclusion with respect to the allegations against Mirage or Acquisition for damages to the Boardwalk as a result of their acquisition of land or bonds through agents or subsidiaries, as well as the allegations that the price paid for the fairness opinion was excessive. These, too, are derivative claims. Although the allegations may be relevant to outlining Mirage's

overall plan, they are unnecessary to a claim for damages relating to an invalid merger.[77]

The second category of factual allegations presents a different picture. If the Mirage paid inflated prices to obtain Boardwalk's option to purchase adjacent land, or for the land itself, for the purpose of influencing the shareholders' or directors' merger vote, then these allegations go to the validity of the merger. The same is true of the allegations that an excessive fee was paid for the fairness opinion in order to obtain an opinion that undervalued the Boardwalk's stock. These allegations are all proper to support a claim for rescission or monetary damages caused by an invalid merger, although no such claims are specifically pleaded.

When considering a motion to dismiss made under NRCP 12(b)(5), a district court must construe the complaint liberally and draw every fair inference in favor of the plaintiff.[78] A complaint should not be dismissed unless it appears to a certainty that the plaintiff could prove no set of facts that would entitle him or her to relief.[79] Moreover, when a complaint can be amended to state a claim for relief, leave to amend, rather than dismissal, is the preferred remedy.[80] Leave to amend should be freely given when justice requires, and a request to amend should not be denied simply because it was made in open court rather than by formal motion.[81]

Here, the complaint contains factual allegations that, if true, could support a challenge to the validity of the merger. The alle-

---

[77]We note that evidence of the race book operations, Mirage land acquisition activity and the fairness opinion may still be admissible in either evaluating the value of the Boardwalk's stock to determine damages as to any claims challenging the validity of the merger or as proof of wrongful conduct in the merger process. We merely hold they do not support separate claims for damages and must be tied to a claim that the merger was invalid. 15 Fletcher, *supra* note 19, § 7160; *Cavalier Oil Corp. v. Harnett,* 564 A.2d 1137, 1142-43 (Del. Super. Ct. 1989); *Coggins,* 492 N.E.2d at 1116, 1120; *Werner,* 502 S.E.2d at 900-01; *Johnson,* 69 S.E.2d at 593; *American Network,* 834 S.W.2d at 299; *cf. HMO-W Inc. v. SSM Health Care System,* 611 N.W.2d 250, 258 (Wis. 2000) (suggesting complaints must challenge the invalidity of the merger and cannot be based solely on a dispute over the acquisition price or improper conduct that does not go to the merger process; improper conduct unrelated to the merger is only relevant to the extent it relates to evidence of the fair value of the merged corporation).

[78]*Capital Mortgage Holding v. Hahn,* 101 Nev. 314, 315, 705 P.2d 126, 126 (1985).

[79]*Edgar v. Wagner,* 101 Nev. 226, 228, 699 P.2d 110, 112 (1985).

[80]*See generally Zalk-Josephs Co. v. Wells Cargo, Inc.,* 81 Nev. 163, 169-70, 400 P.2d 621, 624-25 (1965).

[81]*Weiler v. Ross,* 80 Nev. 380, 382, 395 P.2d 323, 324 (1964).

gations would also support a shareholder derivative action. However, because the complaint fails to contain a claim actually seeking rescission or challenging the validity of the merger, the complaint, as worded, sets forth derivative, not individual claims.[82] As a former shareholder has no standing to bring breach of fiduciary duty or loyalty actions for derivative claims, the district court was correct in finding that the complaint failed to state a claim upon which relief may be granted.

Although we conclude that the complaint was insufficient, we must still consider whether the dismissal was proper in light of Cohen's offer to amend the complaint. Cohen indicated to the district court that he would amend the complaint to clear up any confusion regarding the need to prove the invalidity of the merger before the shareholders could seek monetary damages. Thus, the issue is not only whether the complaint failed to state a cause of action, but also whether the district court abused its discretion by not permitting Cohen to amend the complaint.

In this instance, the request to amend came at an early stage of the proceedings and in response to the motion to dismiss. Mirage was already on notice of the facts that would give rise to a potential claim for rescission or monetary damages arising from an improper merger. There was no reason to believe the request to amend was made in bad faith or for any dilatory motive.[83] Therefore, given the factual allegations in the complaint that would support a claim for rescission or damages relating to the invalidity of the merger and our general policy to decide cases upon their merits, we conclude that the district court abused its discretion in refusing to allow the amendment and dismissing the complaint.

## CONCLUSION

We conclude that the exclusive remedy provisions of NRS 92A.380(2) permit a shareholder to challenge the validity of a merger based upon fraud or unlawful conduct in the merger process. Actions challenging the validity of the merger must normally be taken before the completion of the merger, whereas dissenters' rights must be exercised in conformance with the time lines set forth in NRS 92A.300–92A.500. Former shareholders who are fully informed of the facts supporting their challenge to the merger before approving the merger or tendering their shares for the merger price have acquiesced in the merger. They are therefore barred from pursuing a post-merger action to invalidate

[82]See Coggins, 492 N.E.2d at 1116; Werner, 502 S.E.2d at 900-01; American Network, 834 S.W.2d at 299.

[83]Stephens v. Southern Nevada Music Co., 89 Nev. 104, 105-06, 507 P.2d 138, 139 (1973).

the merger or seek monetary damages arising from an improper merger.

We further conclude that the district court was correct in dismissing all of the derivative claims in the complaint, but erred in not permitting Cohen to amend the complaint to clarify that he was seeking rescission of the merger and/or monetary damages based upon the invalidity of the merger.

We affirm the order to the extent that it dismissed the derivative causes of action based upon the operation of the race book, the loss of the land options, the impairment of the Boardwalk's expansion, and recovery of fees paid for the fairness opinion. We reverse the order to the extent that it dismissed the allegations supporting claims for rescission, breach of loyalty, breach of fiduciary duty, and conspiracy involving the validity of the merger, specifically, allegations that improper incentives were paid to approve the merger at a below-market price per share. Upon remand, the district court is instructed to permit Cohen to amend the complaint to properly assert claims for rescission and/or monetary damages resulting from the invalidity of the merger.

SHEARING, J., concurs.

ROSE, J., concurring in part and dissenting in part:

I concur with many of the majority's conclusions regarding a shareholder's dissenter's rights under Nevada's corporate merger law. However, I dissent because I believe that a minority shareholder has the unconditional right to sue a corporation for fraud or illegality, notwithstanding the fact that the minority shareholder tendered his or her shares with knowledge of the wrongful conduct.

First, a restatement of Cohen's factual allegations is necessary to understand the corporate overreaching involved in this case. Cohen alleges facts that, if true, present a picture of a rigged merger election brought about by payoffs and sweetheart deals that produced a 53 percent vote of the Boardwalk shareholders to merge with the Mirage Corporation. The merger was necessary to Mirage because Boardwalk owned the land and the casino south of the Mirage property on the Las Vegas Strip, which was vital for Mirage to acquire if Mirage was to go forward with its expansion. Cohen alleges that Mirage executives devised an elaborate plan to secretly acquire Boardwalk and Boardwalk's 7.8-acre parcel of real property by means of illegal or fraudulent payments to three shareholders who are respondents in this appeal, James Scibelli, Jeffrey Jacobs, and Avis Jansen. These three shareholders provided a clear margin of victory for the merger.

*Cohen's allegations of a pre-merger conspiracy*

Cohen alleges that Mirage conspired with the Boardwalk's controlling shareholders to purchase Boardwalk at an artificially low price by offering special transactions that favored certain members of Boardwalk's board of directors and certain shareholders at the expense of Boardwalk's minority shareholders. First, Scibelli, a shareholder and director of Boardwalk, resigned as a director less than two months before the announcement of the proposed merger. Shortly thereafter, the board of directors awarded Scibelli and his company a $450,000 contract to conduct an independent appraisal, rendering a fairness opinion of the proposed merger despite Scibelli's lack of experience or competence to render any such appraisal opinion of real estate. Cohen alleges that because Scibelli owned warrants issued by Boardwalk that would be rendered worthless if the merger occurred at the proposed $5 per share price, the contract was an indirect way to ensure his vote for the merger and to pay him off for his soon-to-be-worthless warrants. Cohen maintains that a truly independent property appraisal would have cost no more than $20,000.

The second alleged pre-merger conspiracy transaction involved Jansen, a shareholder and chairman of Boardwalk's board of directors, who was one of the owners of a one-acre undeveloped parcel of real property next to the Boardwalk hotel and casino. Shortly before the merger announcement, Mirage purchased the Jansen parcel for $8 million dollars, $3.4 million more per acre than Mirage eventually paid for Boardwalk's 7.8-acre developed parcel. Cohen also alleges that Mirage made an agreement with Jansen to buy out the lease for the gift shop that Jansen owned and operated in Boardwalk at a substantial premium.

The third alleged pre-merger conspiracy transaction involved Jansen, Jacobs, and Jacobs' companies. Shortly before the merger announcement, Boardwalk claimed to need a capital infusion of $3,250,000 to pay interest on its bonds. To raise this money, Boardwalk sold 3,250 ''A'' preferred shares to Jansen and to Jacobs' companies at $1,000 per share. The agreement also provided that Jacobs and his companies would receive, for no stated additional compensation, an option to purchase Jansen's one-acre parcel of real property adjacent to Boardwalk in order to develop the property in a manner that would be beneficial to Boardwalk. After Jacobs received the option, he assigned it to Mirage for $3,735,000, even though it was expressly stated that the option shall not be conveyed to anyone that Boardwalk did not control. The end result was that the infusion of needed money ultimately came from Mirage, while Jacobs and Jansen received additional

compensation and a strong incentive to support the merger—the purchase of their preferred shares by the merging corporations.

I conclude that Cohen's allegations of a pre-merger conspiracy, which involves thinly disguised payoffs and sweetheart deals, are sufficient to entitle him to present his evidence to a jury. The only legal question is whether he forfeited that right by accepting payment for his stock with knowledge of some of the facts regarding his allegations of fraud and illegality.

*A shareholder's right to sue for fraud or illegality under Nevada's corporate merger law*

At the heart of the controversy are a few key sections of Nevada's corporate merger law adopted in 1995 and based upon the Model Business Corporation Act of 1984 (''Model Act''). In addition to acknowledging that Nevada's corporate merger law is based upon the Model Act, the majority states that the Model Act is based upon Delaware and New York case law; and after recognizing this, the majority relies on Delaware and New York case law in interpreting Nevada's corporate merger law. Official comment to section 13.02 notes that the Model Act basically adopted New York's formula with regard to a shareholder's dissenter's rights.[1] The comment further notes:

> Because of the variety of situations in which unlawfulness and fraud may appear, [section 13.02(b)] makes no attempt to specify particular illustrations. Rather, it is designed to recognize and preserve the principles that have developed in the case law of Delaware, New York and other states with regard to the effect of dissenters' rights on other remedies of dissident shareholders.[2]

I agree with the majority that the case law from New York and Delaware is persuasive authority; however, I disagree that we should rely on this authority in interpreting Nevada's corporate merger law.

Additionally, the majority's reliance on Delaware case law has very little persuasive effect upon us for two reasons. First, Delaware has not adopted the Model Business Corporation Act, but rather has enacted its own statutory scheme governing corporate mergers.[3] Second, Delaware has both courts of law and equity, and

---

[1]*See* Model Bus. Corp. Act. Ann. § 13.02 cmt. at 13-16 (3d ed. Supp. 1996).

[2]*Id.* at 13-17.

[3]*See* Robert W. Hamilton, *The State of State Corporation Law: 1986,* 11 Del. J. Corp. L. 3, 22 (1986).

maintains the distinction between each type of action.[4] Nevada has long since eliminated the distinction between claims seeking legal and equitable relief.[5] This legal division affects many Delaware cases and their analyses, and as such, reliance on Delaware case law is often not appropriate.

In any event, I agree with the majority's conclusion that under NRS 92A.380(2), a minority shareholder may attack the validity of the merger, seeking monetary damages based upon the corporation's improper conduct during the merger process despite a minority shareholder's appraisal remedy. Accordingly, as the majority concludes, Cohen's allegations of fraud are not barred by the fact that he did not assert his dissenter's rights.

## Doctrine of acquiescence

The majority ties a minority shareholder's acceptance of payment generated by the shareholders' vote of the merger to a shareholder's unequivocal right to sue independently for fraud or illegal action. In particular, the majority provides that when a minority shareholder tenders his or her shares with full knowledge of the fraudulent or illegal conduct, the minority shareholder acquiesces in the transaction, and thereby waives his or her right to attack the merger. It is my view that the unqualified right to sue given by Nevada statute is independent from any action taken by a minority shareholder in accepting payment for the then fixed value of his or her shares. Thus, I disagree with the majority's application of the acquiescence doctrine to minority shareholders who tender their shares.

First, the majority asserts that a minority shareholder can be barred from his or her right to sue for fraud or illegality if he or she accepted payment of the price fixed by the majority shareholders. This seems to be at odds with the clear language of Nevada's exclusivity provision, which gives any shareholder the unconditional right to sue for fraud or illegality, and is unfair to the individual shareholder who wants to sue for fraud or illegality. The majority requires a shareholder desiring to bring such a suit to abstain from taking the assessed price while the other shareholders

[4]*See generally* Kurt M. Heyman & Patricia L. Enerio, *The Disappearing Distinction Between Derivative and Direct Actions,* 4 Del. L. Rev. 155 (2001) (noting that Delaware continues to guard the distinction between legal and equitable jurisdiction).

[5]*See Botsford v. Van Riper,* 33 Nev. 156, 196, 110 P. 705, 712 (1910) (noting that the district court administers legal and equitable relief); *see also* Nev. Const. art. 6, § 14 ("There shall be but one form of civil action, and law and equity may be administered in the same action.").

can do so, even if they are accused of fraud. Additionally, a minority shareholder may well need the money to fight the corporate raiders and business giants. Nothing in Nevada's corporate merger law states that a minority shareholder loses his or her right to sue for fraud or illegality if he or she takes the set price of the stock, and this court should refrain from adding such language to a clear and unambiguous statute.[6] Statutes that are clear and unambiguous should be given their normal and unambiguous meaning.[7]

In addition, as the Supreme Judicial Court of Massachusetts noted, "[t]he dangers of self-dealing and abuse of fiduciary duty are greatest in freeze-out situations" like this merger, where controlling shareholders and corporate directors choose "to eliminate public ownership."[8] The court noted further that "[i]t is in these cases that a judge should examine with closest scrutiny the motives and the behavior of the controlling [shareholders]."[9]

Second, the majority states that a minority shareholder's action for fraud or illegality is barred if the shareholder accepted payment knowing the facts that constitute the alleged fraud or illegality. Again, the statute contains no such language, and this position is patently unfair to a minority shareholder. A minority shareholder is deprived of the opportunity of both accepting the set payment for the stock, as everyone else can, and asserting his or her suit for fraud or illegality. The complaining shareholder, and perhaps the whistleblower about corporate fraud, is penalized if he or she accepts payment even though the alleged fraudulent shareholders or corporate directors may accept such payment with impunity. I consider this unfair and a perversion of the statute that contains no such provision.

Notwithstanding the majority's reliance on Delaware case law, which I previously addressed, the majority cites to Georgia for its explanation of the doctrine of acquiescence. In *Columbus Mills, Inc. v. Kahn,*[10] the Supreme Court of Georgia asserted general statements of law that support the majority's position, but that case can be distinguished on its face. In *Kahn,* minority shareholders brought suit during the merger process, but when the trial court de-

---

[6]*See Salas v. Allstate Rent-A-Car, Inc.,* 116 Nev. 1165, 1168, 14 P.3d 511, 513-14 (2000) (noting that this court seeks to give effect to the Legislature's intent, and in doing so, this court seeks to look at the plain language of the statute).

[7]*See Bd. of County Comm'rs v. CMC of Nevada,* 99 Nev. 739, 744, 670 P.2d 102, 105 (1983) ("A reading of legislation which would render any part thereof redundant or meaningless, where that part may be given a separate substantive interpretation, should be avoided.").

[8]*Coggins v. New England Patriots Football Club,* 492 N.E.2d 1112, 1117 (Mass. 1986).

[9]*Id.*

[10]377 S.E.2d 153 (Ga. 1989).

nied their motion to enjoin the merger, they accepted the fixed price for their shares. Subsequently, the trial court dismissed the minority shareholders' suit, ruling that since the minority shareholders had voluntarily surrendered their suit for the fixed price, they could not thereafter attack the merger in order to obtain more money.[11] Contrary to the Georgia Court of Appeals, the Supreme Court of Georgia affirmed that decision.[12] Cohen's case presents a far different factual scenario.

The issue in this case has no controlling precedent and the cases cited by the majority have only marginal persuasive authority. Therefore, we are free to give full effect to the language of the statute in selecting the best precedent for Nevada, giving full consideration to the balance between corporations and shareholders, which Nevada's corporate merger law is seeking to achieve, as well as other policy considerations. When we do this, we should recognize the grossly inequitable strength between corporations and most shareholders and not make it more difficult than necessary for a minority shareholder to sue for fraud or illegality against business giants and corporate raiders. The majority opinion seems to be doing just the opposite. The majority's reasoning provides such an inadequate remedy to minority shareholders that the majority practically gives ''corporate insiders license to commit fraud and gross breaches of their fiduciary duties with impunity.''[13] This should not be the policy of this state.

Even though Nevada's corporate merger law does not impose a statute of limitations for fraud or illegality actions, the majority arbitrarily imposes such limitations under the mistaken belief that actions for fraud or illegality are part of the merger process and must be commenced during it. I believe this unfairly imposes limitations on a minority shareholder's unconditional right to sue for fraud or illegality, and also improperly bundles this right to sue with the merger/appraisal process. In my view, a suit for fraud or illegality is separate from the merger process to the extent that the merger can be completed, subject only to a suit for damages against the offending parties, which may or may not include the surviving corporation. The majority seems to concede that such a scenario is possible.

A strict application of the doctrines of acquiescence and estoppel as espoused by the majority puts further roadblocks in the path of a shareholder suing for fraud or illegality. The application of these general doctrines to condition the right to sue for fraud or illegality distorts the statutory scheme and compels a shareholder

---

[11]*Id.* at 154.

[12]*Id.*

[13]*Steinberg v. Amplica, Inc.,* 729 P.2d 683, 698 (Cal. 1986) (Bird, C. J., dissenting).

suing for fraud or illegality to institute his or her action immediately, even though all the facts are not fully developed or capable of quick investigation.

The majority also cites with approval a procedure used by other states to analyze post-merger challenges by minority shareholders and the application of the doctrines of acquiescence or estoppel. Rather than adopt a burden shifting analysis, which necessarily requires the determination of who will determine whether the appropriate burdens have been met, with the judge acting as the jury, I would stick with the procedure usually employed in Nevada. A plaintiff must establish by competent evidence the essential allegations of the complaint if challenged and demonstrate that a question of fact exists. If the plaintiff meets his or her burden, a trial on the contested issues is held. I see no reason why this procedure is not adequate in a case where a minority shareholder is bringing a post-merger challenge and the defense of estoppel or acquiescence is raised.

The Legislature provided shareholders standing to sue for fraud or illegality and it should not be abridged by limitations not imposed by Nevada's corporate merger law or by the strict application of the doctrines of estoppel or acquiescence.

*Derivative claims*

Nevada's corporate merger law gives a shareholder the right to sue for fraud or illegality ''with respect to him or the domestic corporation'' and nowhere does it state that the claim may not ask for relief that is derivative in nature.[14] The direction given by the statute is just the opposite. Once again, I believe the majority is ignoring the clear statutory language and putting additional conditions on the unequivocal right to sue for fraud or illegality. Under NRS 92A.380(2), an aggrieved shareholder should be able to sue for any damages that were proximately caused by illegal or fraudulent acts.

But even assuming that the general distinction between shareholders' individual or derivative actions is applicable to this case, I think the majority's analysis of what constitutes an individual claim is far too narrow. First, the majority seems to imply that if the fraudulent or illegal actions cause the corporation damage, then such damage is not sufficiently independent to be that of an individual shareholder. I believe, as the statute states, that a shareholder can sue for damage caused him or her by fraud or illegality even though the corporation may have also suffered damage. Indeed, the statute provides that the shareholder can sue ''with respect to him or the domestic corporation.''[15] Second, I think any

[14]NRS 92A.380(2).

[15]*Id.*

evidence of fraud or illegality that causes damage to a shareholder may be alleged in the complaint and should be admissible at trial. Therefore, it seems that the majority improperly eliminates allegations of land acquisitions and issued bonds that relate to the fraudulent allegations, as well as excessive fees paid for an appraisal report.

By classifying Cohen's first category of allegations as derivative, the majority strips Cohen of three of his major allegations of excessive payments to directors in order to bring about a favorable vote on the merger. It is alleged that three Boardwalk shareholders and directors received exorbitant fees in the following manner shortly before the merger vote: (1) Scibelli is alleged to have been given an appraisal fee of $450,000, twenty times what was reasonable and customary; (2) Jansen is alleged to have been paid an excessive $8,000,000 for his parcel of real property next to the Boardwalk land; and (3) it is alleged that a private sale of $3,250,000 of preferred shares was made by Boardwalk to Jansen and Jacobs, and the assignment to Jacobs' companies of Boardwalk's option to purchase Jansen's real property, which Jacobs' companies assigned, contrary to the agreement, to the Mirage for $3,750,000. While the majority acknowledges that this evidence may be admissible to show "wrongful conduct" in the merger process, I see no reason why these are not proper allegations of specific wrongdoing. It seems to me to be part and parcel of an action for fraud or illegality.

I do agree with the majority that Cohen's second category of allegations is clearly individual claims. However, the majority goes on to conclude that such allegations are derivative claims because there are no allegations actually seeking rescission or challenging the validity of the merger: "[B]ecause the complaint fails to contain a claim actually seeking rescission or challenging the validity of the merger, the complaint, as worded, sets forth derivative, not individual claims."[16]

This conclusion resembles a requirement imposed in some states where the distinction between law and equity courts is still recognized and relief seeking "equitable relief," such as rescission or injunctive relief, must be pleaded to satisfy jurisdictional requirements of an equity court. The majority requires that a minority shareholder in Cohen's position must allege the invalidity of the merger and ask to rescind or enjoin it rather than just ask for monetary damages. And although an old refrain in this opinion by now, nothing in the statute requires that the suing shareholder must ask for rescission or injunction of the merger, and Nevada eliminated the distinction between law and equity long ago.

---

[16]*See* majority opinion *ante* p. 23.

I do agree that allegations of general mismanagement are derivative and improper in this lawsuit unless they have a reasonable relation to the fraud or illegality charged. I further agree that Cohen should be given the right to amend his complaint as permitted by the majority opinion.

## Conclusion

The Nevada Legislature provided minority shareholders the unequivocal right to sue for fraud or illegal conduct that brought about a merger. A minority shareholder tendering his or her shares and receiving payment should not hobble this unequivocal right. To do otherwise would permit inequitable results as in this case, where a complaining minority shareholder will be deprived of his legal right to sue the corporate raiders and business giants who are alleged to have brought about a merger by fraud and illegality. The Legislature set a balance between business and shareholders, determining that minority shareholders should have the unfettered right to sue for illegal or fraudulent action that brings about a merger. This court should not upset that balance by erecting obstacles for a complaining shareholder.

Because I agree with the majority's conclusion that a minority shareholder may file an action for fraud or illegality despite the appraisal remedy, but disagree with the majority's reliance on Delaware case law and its application of the doctrine of acquiescence, I respectfully concur in part and dissent in part.