133 Nev., Advance Opinion 59

# IN THE SUPREME COURT OF THE STATE OF NEVADA

PARAMETRIC SOUND
CORPORATION; VTB HOLDINGS,
INC.; KENNETH POTASHNER;
ELWOOD NORRIS; SETH
PUTTERMAN; ROBERT KAPLAN;
ANDREW WOLFE; AND JAMES
HONORÉ,
Petitioners,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CLARK; AND THE HONORABLE
ELIZABETH GOFF GONZALEZ,
DISTRICT JUDGE,
Respondents,
and
VITIE RAKAUSKAS, INDIVIDUALLY
AND ON BEHALF OF ALL OTHERS
SIMILARILY SITUATED; AND
INTERVENING PLAINTIFFS,
RAYMOND BOYTIM AND GRANT
OAKES,
Real Parties in Interest.

No. 66689

FILED

SEP 14 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Original petition for a writ of mandamus or, alternatively, a writ of prohibition challenging a district court order denying a motion to dismiss in a corporate shareholder action.

*Petition granted.*

Snell & Wilmer, LLP, and Kelly H. Dove and Richard C. Gordon, Las Vegas; Dechert, LLP, and Joshua D. N. Hess, San Francisco, California; Dechert, LLP, and Neil A. Steiner, New York, New York,
for Petitioners Parametric Sound Corporation and VTB Holdings, Inc.

Supreme Court
of
Nevada

(O) 1947A

17-31061

Holland & Hart, LLP, and Robert J. Cassity and J. Stephen Peek, Las Vegas; Sheppard, Mullin, Richter & Hamilton, LLP, and John P. Stigi, III, Los Angeles, California,
for Petitioners Kenneth Potashner, Elwood Norris, Seth Putterman, Robert Kaplan, Andrew Wolfe, and James Honoré.

O'Mara Law Firm, P.C., and David C. O'Mara, Reno; Robbins Geller Rudman & Dowd, LLP, and Randall J. Baron, A. Rick Atwood, Jr., David T. Wissbroecker, and David A. Knotts, San Diego, California; Saxena White, PA, and Jonathan M. Stein and Joseph E. White, III, Boca Raton, Florida,
for Real Parties in Interest.

Brownstein Hyatt Farber Schreck, LLP, and Jeffrey S. Rugg and Maximilien D. Fetaz, Las Vegas,
for Amicus Curiae State Bar of Nevada, Business Law Section.

---

BEFORE THE COURT EN BANC.[1]

*OPINION*

By the Court, HARDESTY, J.:

In this case, we consider whether shareholders lack standing to sue a corporation and its directors because the shareholders' claims are derivative, not ones asserting direct injury. In doing so, we examine *Cohen v. Mirage Resorts, Inc.*, 119 Nev. 1, 62 P.3d 720 (2003), which discussed the distinction between direct and derivative shareholder claims. In *Cohen*, we summarized the distinction as follows:

---

[1]The Honorable Lidia S. Stiglich, Justice, did not participate in the decision of this matter.

 

> A claim brought by a dissenting shareholder that questions the validity of a merger as a result of wrongful conduct on the part of the majority shareholders or directors is properly classified as an individual or direct claim. The shareholder has lost unique personal property—his or her interest in a specific corporation. Therefore, if the complaint alleges damages resulting from an improper merger, it should not be dismissed as a derivative claim. On the other hand, if it seeks damages for wrongful conduct that caused harm to the corporation, it is derivative and should be dismissed.

*Id.* at 19, 62 P.3d at 732 (footnotes omitted).

Although the parties agree *Cohen* is directly relevant to this case, they offer conflicting applications. Petitioners argue that the shareholders have not lost unique personal property and were not shareholders of a merging entity. Thus, under the petitioners' interpretation of *Cohen*, the shareholders' claims are derivative and their complaint should be dismissed. The shareholders argue that the petitioners' interpretation is too narrow and that *Cohen* only requires a claimant to assert wrongful conduct affecting the validity of a merger to establish a direct claim.

We thus take this opportunity to clarify *Cohen* and distinguish between direct and derivative claims by adopting the direct harm test, as articulated in *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004), which allows a direct claim when shareholder injury is independent from corporate injury. Applying *Tooley*'s direct harm test to the facts of this case, we conclude that the shareholders' complaint alleges derivative dilution claims, not direct claims. Accordingly, we grant the

petition for a writ of mandamus[2] and instruct the district court to dismiss the complaint without prejudice to the shareholders' ability to file an amended complaint.

## FACTS AND PROCEDURAL HISTORY

Petitioner Parametric Sound Corporation (Parametric) was a small, publicly traded company that negotiated a merger with petitioner VTB Holdings, Inc. (Turtle Beach), a larger, privately owned company. Parametric and Turtle Beach ultimately agreed to a reverse triangular merger.[3] To accomplish the merger, Parametric created a subsidiary named Paris Acquisition Corporation (Paris), and Paris was merged into Turtle Beach. As a result, Paris ceased to exist and Turtle Beach became a subsidiary of Parametric.

---

[2]In the alternative, petitioners seek a writ of prohibition. A writ of prohibition is appropriate when a district court acts without or in excess of its jurisdiction. NRS 34.320. We conclude that a writ of prohibition is improper here because the district court had jurisdiction to hear and determine the outcome of the motion to dismiss.

[3]In a typical reverse triangular merger, the acquiring corporation forms a shell subsidiary, which is then merged into the target corporation. The target corporation assumes all of the assets, rights, and liabilities of both the target corporation and the shell subsidiary. The shell subsidiary ceases to exist and the target corporation survives the merger and becomes the acquiring corporation's subsidiary. The stockholders of the target corporation typically receive shares of the acquiring corporation's stock as consideration for the merger. *Sealock v. Tex. Fed. Sav. & Loan Ass'n*, 755 S.W.2d 69, 71 (Tex. 1988); *see Meso Scale Diagnostics, LLC v. Roche Diagnostics GMBH*, No. C.A. 5589-VCP, 2011 WL 1348438, at *6 (Del. Ch. Apr. 8, 2011); *see also* NRS 92A.250(1)(d) (providing that the entity surviving a merger "has all of the liabilities of each other constituent entity").

To facilitate the merger, over 90 percent of Parametric shareholders voted to authorize the issuance of new stock to the Turtle Beach shareholders as consideration.[4] Upon issuance, the Turtle Beach shareholders held an 80 percent interest in Parametric, and the original Parametric shareholders were left with a 20 percent stake in Parametric.[5] After the merger, Parametric was renamed Turtle Beach Corporation,[6] a new board of directors was elected, and a new management team was installed.

Several non-controlling shareholder actions challenging the merger were consolidated in the district court. Real parties in interest Raymond Boytim and Grant Oakes filed a class action complaint in intervention on behalf of the original, public shareholders of Parametric against Parametric, Turtle Beach, and Parametric's board of directors,

[4]Because Parametric was not a constituent party to the merger between Turtle Beach and Paris, the Parametric shareholders did not vote to approve the merger. See NRS 92A.015(1) (defining "[c]onstituent entity" as "each merging or surviving entity"); NRS 92A.120(1) (providing that each constituent entity's board of directors shall present a plan of merger to its shareholders for approval). They only voted on whether to issue new stock in accordance with NASDAQ Equity Rule 5635(a)(1), which outlines the "circumstances under which shareholder approval is required prior to an issuance of securities in connection with . . . the acquisition of the stock or assets of another company."

[5]We note that, according to the proxy statement, in Parametric's fiscal year ending September 30, 2013, Parametric had a gross profit of approximately $271,000. Turtle Beach's gross profit for the same period totaled approximately $63,725,000. Thus, Parametric shareholders were retaining a 20 percent interest in a combined entity expected to be significantly more profitable.

[6]For clarity, we continue to refer to the parent company as Parametric.

petitioners Kenneth Potashner, Elwood Norris, Andrew Wolfe, Robert Kaplan, Seth Putterman, and James Honoré (we collectively refer to all petitioners as petitioners except when necessary to separately discuss the corporate entities). The shareholders eventually designated the complaint in intervention as the operative complaint in the action.

The complaint asserted two causes of action: (1) breach of fiduciary duties as to Parametric's board of directors, and (2) aiding and abetting the directors' breaches of fiduciary duties by Parametric and Turtle Beach. Those two causes of action can be divided into four main factual allegations. First, the shareholders alleged that five of the six directors were conflicted when approving the merger.[7] Second, the shareholders alleged that deal protection agreements entered into between Parametric and Turtle Beach were coercive and preclusive—depriving the shareholders of a meaningful vote on the merger while simultaneously warding off potentially superior merger offers—and that the go-shop provision[8] in the merger agreement was a sham. Third, the shareholders alleged that Parametric board members intentionally delayed announcing positive and material information about Parametric in an attempt to manipulate the premium on the merger, and made several other disclosure omissions and misstatements associated with the proxy

---

[7]Although petitioner James Honoré was a named defendant in the RPI shareholders' complaint, the complaint made no allegations against him.

[8]Go-shop provisions are included in many merger agreements, providing sellers an opportunity to solicit other buyers for a certain time period. Guhan Subramanian, *Go-Shops vs. No-Shops in Private Equity Deals: Evidence and Implications*, 63 Bus. Law. 729, 730, 735 (2008).

statement. Fourth, the shareholders claimed that because of the wrongful conduct alleged, Parametric's valuation was lower than it should have been and Turtle Beach's valuation was higher than it should have been, resulting in a 65 percent to 82 percent dilution of the pre-merger value of the shareholders' Parametric stock when considering their 20 percent interest in the post-merger company.

Petitioners moved to dismiss the complaint, arguing that the shareholders lacked standing because their claims were derivative, not direct.[9] Without explanation, the district court denied the motion. This writ petition followed.

## DISCUSSION

*Writ relief is appropriate*

"A writ of mandamus is available to compel the performance of an act that the law requires as a duty resulting from an office, trust, or station or to control an arbitrary or capricious exercise of discretion." *Humphries v. Eighth Judicial Dist. Court*, 129 Nev. 788, 791, 312 P.3d 484, 486 (2013) (quoting *Int'l Game Tech., Inc. v. Second Judicial Dist. Court*, 124 Nev. 193, 197, 179 P.3d 556, 558 (2008)). "Writ relief is not available, however, when an adequate and speedy legal remedy exists." *Int'l Game Tech.*, 124 Nev. at 197, 179 P.3d at 558. "While an appeal generally constitutes an adequate and speedy remedy precluding writ relief, we have, nonetheless, exercised our discretion to intervene 'under circumstances of urgency or strong necessity, or when an important issue of law needs clarification and sound judicial economy and administration

---

[9]The shareholders do not argue, and we do not address, whether they can assert a derivative claim. *See Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1046 n.8 (Del. 2004).

favor the granting of the petition.'" *Cote H. v. Eighth Judicial Dist. Court*, 124 Nev. 36, 39, 175 P.3d 906, 908 (2008) (footnote omitted) (quoting *State v. Second Judicial Dist. Court*, 118 Nev. 609, 614, 55 P.3d 420, 423 (2002)).

This case involves an important issue of law recognizing the distinction between direct and derivative corporate shareholder claims. We take this opportunity to clarify *Cohen* and in doing so adopt a clearer standard for recognizing the distinction between direct and derivative corporate shareholder claims in this context. Furthermore, the interests of sound judicial economy and administration favor resolving this writ petition on the merits, as clarifying the law at this early stage of the underlying litigation will permit the shareholders to appropriately plead their case and prevent this matter from proceeding under an erroneous application of the law. We review questions of law de novo, even in the context of a writ petition. *Int'l Game Tech.*, 124 Nev. at 198, 179 P.3d at 559.

*Nevada caselaw regarding direct and derivative shareholder claims*

As noted above, both parties cite the rule in *Cohen* but articulate different applications to this case. Petitioners argue that the shareholders' complaint states only derivative claims. They argue that *Cohen v. Mirage Resorts, Inc.*, 119 Nev. 1, 62 P.3d 720 (2003), requires the loss of unique personal property for a direct claim to exist, and that because the shareholders continued to own the same number of Parametric shares before and after the merger, the shareholders did not lose any "unique personal property" and they cannot state a direct claim against Parametric. Petitioners further argue that the merger discussion in *Cohen* does not apply here, because Parametric was not a constituent

entity in a merger under Nevada law, and the shareholders' claims are for the dilution in the value of their Parametric stock, which is a derivative claim.

The shareholders argue that *Cohen* does not demand such a stringent approach. Rather, the shareholders argue that *Cohen* only requires allegations regarding wrongful conduct toward "the validity of the merger" to state a direct claim. The shareholders further argue that this court's decision in *Cohen* concerning direct versus derivative claims is consistent with the Delaware Supreme Court's later decision in *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1035 (Del. 2004). In *Tooley*, the Delaware Supreme Court rejected "the concept of 'special injury'" and affirmed its use of the so-called direct harm test to distinguish between direct and derivative shareholder claims; that is, "Who suffered the alleged harm—the corporation or the suing stockholder individually—and who would receive the benefit of the recovery or other remedy?" 845 A.2d at 1035.[10]

---

[10]The shareholders also argue that Parametric's board of directors owed fiduciary duties directly to them. In general, a corporate director or officer owes fiduciary duties to the corporation, not the shareholders, and the shareholders may enforce the fiduciary duties through derivative actions. *See N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 101 (Del. 2007). There may be certain situations, however, in which the directors' and officers' fiduciary duties do run directly to the shareholders. *Malone v. Brincat*, 722 A.2d 5, 10 (Del. 1998). In this case, however, while the shareholders allege and argue generally that the board of directors owed a fiduciary duty to them, the shareholders did not allege any cause of action based on a duty owed to the shareholders, as opposed to the corporation, and did not discuss how the facts demonstrate an injury to the shareholders. Thus, this argument is not determinative as to whether the claims herein are direct or derivative. *Bayberry Assocs. v. Jones*, 783 S.W.2d 553, 559-60 (Tenn. 1990) ("Without

*continued on next page...*

SUPREME COURT
OF
NEVADA

(O) 1947A

Nonetheless, both parties seek clarification of *Cohen*. They also both contend that *Cohen* is most consistent with *Tooley*'s direct harm test for distinguishing between direct and derivative claims. But petitioners argue that the direct harm test forecloses the shareholders' claims as derivative, while the shareholders argue that the test permits their claims as direct. We thus begin by examining direct and derivative shareholder claims and how we distinguished between them in *Cohen*.

"A derivative claim is one brought by a shareholder on behalf of the corporation to recover for harm done to the corporation." *Cohen*, 119 Nev. at 19, 62 P.3d at 732. A shareholder must make a demand on the board of directors to address the shareholder's claims prior to bringing a derivative action, or demonstrate that such a demand is futile. *Shoen v. SAC Holding Corp.*, 122 Nev. 621, 633, 137 P.3d 1171, 1179 (2006); *see* NRS 41.520(2); NRCP 23.1. Alternatively, shareholders have standing to bring suit for direct injuries they have suffered and that are separate from any injury the corporation may have suffered without making a demand on the board of directors. *Cohen*, 119 Nev. at 19, 62 P.3d at 732. The distinction between a direct and derivative claim, however, is not always clear. We most recently addressed this distinction in *Cohen*.

In *Cohen*, Boardwalk Casino, Inc., a small publicly traded casino, merged with Mirage Acquisition Sub, Inc., a subsidiary of the

---

...*continued*
more, general language concerning fiduciary duty owed to shareholders by directors does not support a direct action."); *see also* NRS 78.138(1), (4)-(5).

 

Mirage Resorts, Inc.[11] 119 Nev. at 7-8, 62 P.3d at 724-25. Harvey Cohen, a minority shareholder of Boardwalk, attended a special shareholder meeting at which a majority of Boardwalk's shareholders approved the merger. *Id.* at 7, 62 P.3d at 725. Cohen did not exercise dissenters' rights, but filed a complaint alleging breach of fiduciary duty claims against Boardwalk's directors and majority shareholders. *Id.* at 7-8, 62 P.3d at 724-25. Cohen alleged that the Mirage provided Boardwalk's majority shareholders and directors with above market prices on side deals in exchange for Boardwalk being sold at a below market price. *Id.* at 8, 62 P.3d at 725. The complaint also alleged that the directors mismanaged Boardwalk, resulting in lost revenue, and that advisors who rendered a fairness opinion received payoffs to understate Boardwalk's valuation. *Id.* A motion to dismiss was granted by the district court against Cohen based on the court's finding that his claims were derivative in nature. *Id.* at 9, 62 P.3d at 726.

On appeal, this court examined minority shareholders' rights during and after a merger. *Id.* at 9-18, 62 P.3d at 726-32. We held, among other things, that a minority shareholder may initiate an action for rescission of the merger or monetary damages where the merger was accomplished through fraud or the unlawful conduct of the individuals controlling the corporation. *Id.* at 11, 62 P.3d at 727. The minority shareholder "must allege wrongful conduct that goes to the approval of the merger." *Id.* at 13, 62 P.3d at 728. The term "fraudulent" in this context

---

[11]It is unclear from *Cohen* whether this was a forward or reverse triangular merger, but the distinction is irrelevant to our consideration of this matter.

SUPREME COURT
OF
NEVADA

(O) 1947A

is a term of art encompassing the breach of an officer's, director's, or majority shareholder's fiduciary duties. *Id.* at 13-14, 62 P.3d at 728-29.

We further explained in *Cohen* that, if artfully pleaded as to the merger allegations, a cashed-out former shareholder's claims must also be direct, not derivative. *Id.* at 19, 62 P.3d at 732. The reason for this is that, "[b]ecause a derivative claim is brought on behalf of the corporation, a former shareholder does not have standing to assert a derivative claim." *Id.* On distinguishing between direct and derivative claims, this court explained that a direct claim exists when a shareholder has "injuries that are independent of any injury suffered by the corporation." *Id.* We further explained that "[a] claim brought by a dissenting shareholder that questions the validity of a merger as a result of wrongful conduct on the part of majority shareholders or directors is properly classified as an individual or direct claim" because a "shareholder has lost unique personal property—his or her interest in a specific corporation." *Id.* Concluding, we stated that "if the complaint alleges damages resulting from an improper merger," the claim was direct and should not be dismissed, but "if it seeks damages for wrongful conduct that caused harm to the corporation, it is derivative and should be dismissed." *Id.*

We then turned to an analysis of Cohen's complaint and concluded that Cohen's mismanagement claims were derivative and, thus, properly dismissed by the district court because the harm was the loss in revenue to the corporation, not to an individual shareholder. *Id.* at 21, 62 P.3d at 733-34. However, as to the allegations regarding inappropriate side deals involving majority shareholders and directors, and that advisors received excessive fees for undervaluing the Boardwalk in the fairness

opinion, we concluded that they went "to the validity of the merger" and were direct claims. *Id.* at 22-23, 62 P.3d at 734. In other words, the alleged payoffs and undervaluing of the stock caused Cohen to receive less than he otherwise would have for his stock, which is harm to Cohen, as opposed to the corporation.

Thus, the majority of *Cohen* was devoted to discussing cashed-out minority shareholders' rights after a merger. As to the direct/derivative dichotomy, we somewhat confusingly stated that a direct claim involves an injury independent of a corporations' injury, but that Cohen's claim alleging wrongful conduct in a merger was a direct claim because the "shareholder has lost unique personal property—his or her interest in a specific corporation." *Id.* at 19, 62 P.3d at 732. The implication is that a loss of property was necessary to state a direct claim. We then proceeded to analyze Cohen's claims and allegations at least partially in the context of who was harmed. What we did not do in *Cohen*, however, was to adopt an explicit test for distinguishing direct and derivative shareholder claims. Accordingly, we conclude that we should clarify *Cohen*, and because we have relied on the Delaware court's corporate law in the past, we turn to the development of Delaware law in this area since we decided *Cohen*. *See In re Amerco Derivative Litig.*, 127 Nev. 196, 225, 252 P.3d 681, 702 (2011); *Shoen v. SAC Holding Corp.*, 122 Nev. 621, 634, 137 P.3d 1171, 1179 (2006); *Cohen*, 119 Nev. at 10 n.10, 62 P.3d at 726 n.10.

*How Delaware distinguishes between direct and derivative claims*

One year after we decided *Cohen*, the Delaware Supreme Court reexamined its approach to distinguishing between direct and derivative shareholder claims in *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1035 (Del. 2004). In *Tooley*, the court recounted a

brief history of Delaware jurisprudence, noting that since 1953 the Delaware courts had developed competing concepts to distinguish between direct and derivative claims. *Id.* at 1034-39. One concept was that in order to bring a direct claim, a shareholder "must have experienced some 'special injury.'" *Id.* at 1035 (internal quotation marks omitted). "A special injury is a wrong that is separate and distinct from that suffered by other shareholders, or a wrong involving a contractual right of a shareholder, such as the right to vote, or to assert majority control, which exists independently of any right of the corporation." *Id.* (internal quotation marks omitted); *see also Lipton v. News Int'l, Plc*, 514 A.2d 1075, 1078 (Del. 1986) ("[A] plaintiff alleges a special injury and may maintain an individual action if he complains of an injury distinct from that suffered by other shareholders or a wrong involving one of his contractual rights as a shareholder."), *disapproved of by Tooley*, 845 A.2d at 1035.[12]

The *Tooley* court, however, criticized this concept, stating that the special injury test is "not helpful to a proper analytical distinction between direct and derivative actions" because it is an "amorphous and confusing concept." *Id.* at 1035. In particular, the *Tooley* court observed that the first prong of the special injury test, that the wrong be distinct from that suffered by other shareholders, inaccurately limited direct shareholder claims because "a direct, individual claim of stockholders that does not depend on harm to the corporation can also fall on all stockholders equally, without the claim thereby becoming a derivative claim." *Id.* at 1037; *see also* Daniel S. Kleinberger, *Direct Versus*

---

[12]The special injury test is still used in some jurisdictions. *See* Daniel S. Kleinberger, *Direct Versus Derivative and the Law of Limited Liability Companies*, 58 Baylor L. Rev. 63, 96-97 (2006).

Supreme Court
of
Nevada

(O) 1947A

*Derivative and the Law of Limited Liability Companies*, 58 Baylor L. Rev. 63, 103 (2006) (noting the logical fallacy of the assumption that if the harm is to all shareholders, that it must be derivative).

Moreover, the second prong of the special injury test, a wrong involving a shareholder's contractual rights, is problematic because its focus is on the shareholder's rights rather than the harm to the shareholder. Focusing on the harm to the shareholder is more consistent with the use of the direct/derivative dichotomy in the context of standing, which generally involves an analysis of whether the plaintiff has been injured. *See generally Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (describing the three elements of "the irreducible constitutional minimum of standing" as an injury in fact, a "causal connection between the injury and the conduct complained of," and "that the injury will be redressed by a favorable decision" (internal quotation marks omitted)).[13]

---

[13]Some other jurisdictions use the "duty owed" test, which centers on the identity of "the source of the claim of right itself," *Stegall v. Ladner*, 394 F. Supp. 2d 358, 364 (D. Mass. 2005), and which suffers from similar problems. Under the duty owed test, courts generally focus on the source of the duty and whether the duty is owed to the shareholder "independent of the [shareholder's] status as a shareholder." *McCann v. McCann*, 61 P.3d 585, 590-91 (Idaho 2002). For example, if the shareholder and the corporation are each parties to a contract, the shareholder may sue the corporation directly for breach of contract because the contract is independent of the shareholder's status as a shareholder. Elizabeth J. Thompson, *Direct Harm, Special Injury, or Duty Owed: Which Test Allows for the Most Shareholder Success in Direct Shareholder Litigation?*, 35 J. Corp. L. 215, 222 (2009). As this approach also focuses on the rights of or duties owed to the shareholder, rather than the harm to the shareholder, it suffers similar flaws, and we also reject this approach. *See* Daniel S. Kleinberger, *Direct Versus Derivative and the Law of Limited Liability Companies*, 58 Baylor L. Rev. 63, 108-09 (2006) (raising doctrinal and practical problems with the duty owed test).

Due to the confusion surrounding the "special injury" concept, the *Tooley* court disapproved of its use as a tool to distinguish between direct and derivative claims. 845 A.2d at 1035. Instead, the *Tooley* court specified that determining whether a claim is direct or derivative must be resolved solely based on two questions, "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" *Id.* at 1033. Commentators have characterized this as the "direct harm" test. *See* Daniel S. Kleinberger, *Direct Versus Derivative and the Law of Limited Liability Companies*, 58 Baylor L. Rev. 63, 104-05 (2006).

In answering the first question—who suffered the harm—the relevant inquiry is: "Looking at the body of the complaint and considering the nature of the wrong alleged and the relief requested, has the plaintiff demonstrated that he or she can prevail without showing an injury to the corporation?" *Tooley*, 845 A.2d at 1036 (internal quotation marks omitted). The second prong of the analysis is logically related and should follow; the inquiry is, if the plaintiff prevails, will the recovery benefit the corporation or the shareholders individually. *See id.* As a result, all shareholders can share a common injury and a direct claim will still exist, so long as the shareholders have directly suffered harm that is not dependent on any injury to the corporation.[14] *See id.*

---

[14]New York courts have also adopted the direct harm test. *Yudell v. Gilbert*, 949 N.Y.S.2d 380, 381 (App. Div. 2012).

SUPREME COURT
OF
NEVADA

(O) 1947A

16

*We clarify Cohen consistent with Tooley's direct harm test*

Returning to *Cohen*, although not clearly stated, *Cohen* generally focuses on the injury that was alleged and whether that injury was to the corporation or the shareholder. 119 Nev. at 19, 62 P.3d at 732. This echoes the direct harm test in *Tooley*. *Cohen*'s statement that wrongful conduct in a merger leads to a direct claim because the "shareholder has lost unique personal property—his or her interest in a specific corporation," *id.*, is a different way of stating the second prong in the *Tooley* test. In other words, if the shareholder has lost personal property in the form of his or her interest in the corporation, he or she would necessarily be the beneficiary of any recovery or other remedy.

Accordingly, we align our jurisprudence with Delaware's and clarify that *Cohen* applied the direct harm test. As the *Tooley* court stated, this standard is "clear, simple and consistently articulated and applied by [the] courts." 845 A.2d at 1036. Therefore, to distinguish between direct and derivative claims, Nevada courts should not look to whether the claim involves a transaction classified as a "merger." Rather, courts should consider only "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" *Id.* at 1033.

*The shareholders' complaint*

Having clarified the test to distinguish the direct action versus derivative action analysis, we turn to the shareholders' complaint. The shareholders frame their complaint as one challenging a merger. They argue that under *Cohen*, all they need to do is allege that the merger was invalid or improper due to the Parametric board of directors' intentional misconduct or fraud, and *Cohen* deems their claim a direct claim. We

Supreme Court
of
Nevada

(O) 1947A

17

disagree, however, for three reasons. First, as explained above, *Cohen* should not be read so expansively. The focus should be on the direct harm, not on the use of the word "merger" to describe the challenged transaction. Second, although the shareholders indeed describe the transaction as a "merger," *Cohen* does not apply to the shareholders' complaint because the shareholders do not have a merger to challenge. Third, the shareholders seek damages resulting from dilution of equity and have failed to articulate a direct harm without showing injury to the corporation.

*The shareholders' complaint does not allege a merger encompassing subsequent cashed-out shareholders within the contemplation of Cohen*

Although we have clarified *Cohen*, the shareholders cannot proceed under *Cohen* because their claims do not challenge a merger. The shareholders hold shares of Parametric. They still hold the same shares that they held before Parametric merged with Turtle Beach, and it is here that the form of the merger is important, as opposed to the literature announcing the merger, to which the shareholders direct our attention. Through a reverse triangular merger, Parametric's subsidiary was merged into Turtle Beach, and Turtle Beach became a subsidiary of Parametric. Parametric, as an entity, never merged with any other entity.

The shareholders here are not in the same position as the shareholder in *Cohen* or the other cases that the shareholders cite. In *Cohen*, Boardwalk was merged into a subsidiary of Mirage, and Cohen held shares of Boardwalk that were cashed out. Cohen was thus able to challenge the merger because Boardwalk was one of the merging entities.

The shareholders also cite to *In re Celera Corp. Shareholder Litigation*, in which Quest Diagnostics Incorporated acquired the Celera Corporation through a reverse triangular merger with Quest's subsidiary,

Supreme Court
of
Nevada

(O) 1947A

18

the Sparks Acquisition Corporation. 59 A.3d 418, 425 (Del. 2012). In that case, Celera and Sparks were the merging entities, Sparks was merged out of existence, Celera became a wholly owned subsidiary of Quest, and the Celera shareholders were cashed out. *Id.* In that case, a Celera shareholder challenged the merger, alleging that due to breaches of fiduciary duty, it received a lower price than it should have for its shares of Celera. *Id.* at 427.

In contrast, the shareholders here do not hold shares of any entity that merged. Turtle Beach was merged into Parametric's subsidiary and became a subsidiary of Parametric. The shareholders here hold shares of Parametric, which never merged, and thus the rights discussed in *Cohen* do not inure to the shareholders. Accordingly, as the shareholders structured their complaint and arguments as challenging a merger, the complaint fails to articulate a direct claim under the direct harm test.

*Equity dilution claims*

This does not end our discussion of this matter, however, because the shareholders allege that their stock's value was improperly diluted when Parametric issued new shares to compensate the Turtle Beach shareholders. While we have not examined equity dilution, the Delaware courts have. "A claim for wrongful equity dilution is premised on the notion that the corporation, by issuing additional equity for insufficient consideration, made the complaining stockholder's stake less valuable." *Feldman v. Cutaia*, 956 A.2d 644, 655 (Del. Ch. 2007).

> Such claims are not normally regarded as direct, because any dilution in value of the corporation's stock is merely the unavoidable result (from an accounting standpoint) of the reduction in the value of the entire corporate entity, of which each

SUPREME COURT
OF
NEVADA

(O) 1947A

19

share of equity represents an equal fraction. In the eyes of the law, such equal "injury" to the shares resulting from a corporate overpayment is not viewed as, or equated with, harm to specific shareholders individually.

*Gentile v. Rossette*, 906 A.2d 91, 99 (Del. 2006). Thus, a pure equity dilution claim is viewed as a derivative claim. *Id.*

Delaware courts, however, have recognized that a certain class of equity dilution claims, equity expropriation claims, have a dual nature, being both direct and derivative shareholder claims. *Gentile*, 906 A.2d at 99-100. Equity expropriation claims involve a controlling shareholder's or director's expropriation of value from the company, causing other shareholders' equity to be diluted. *Id.*; *see also Gatz v. Ponsoldt*, 925 A.2d 1265, 1277 (Del. 2007). As the shareholders have not currently couched their complaint in terms of equity expropriation and the district court has not considered this issue, we decline to consider further whether the shareholders can adequately plead such a claim. Nevertheless, the shareholders' complaint does suggest equity dilution, and we conclude that the shareholders should be allowed to amend their complaint to articulate equity expropriation claims, if any such claims exist.[15]

## CONCLUSION

Accordingly, for the reasons set forth above, we grant the writ petition. We clarify *Cohen* and adopt the direct harm test for

---

[15]We note that the Nevada Legislature has addressed this issue in part by enacting statutes that give conclusive deference to the directors' judgment as to the consideration received for issued stock absent actual fraud. *See* NRS 78.200(2); NRS 78.211(1). Thus, the shareholders must show actual fraud in any direct equity dilution claim they may have in order to overcome the statutory deference afforded to the directors.

distinguishing between direct and derivative shareholder claims, as set forth in *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004). We further conclude that dismissal of the shareholders' complaint is proper because Parametric itself was not an entity involved in the reverse triangular merger. We also conclude, however that the shareholders should be given leave to amend their complaint to articulate equity expropriation claims, if any such claims exist. Accordingly, we direct the clerk of this court to issue a writ of mandamus directing the district court to dismiss the complaint without prejudice to the shareholders' ability to file an amended complaint.

_____, J.
Hardesty

We concur:

_____, C.J.
Cherry

_____, J.
Douglas

_____, J.
Gibbons

_____, J.
Pickering

_____, J.
Parraguirre